# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

OATLY AB, et al.,                                    Case No. 1:17-cv-840

        Plaintiffs,                             Barrett, J.
                                                 Bowman, M.J.
   v.

D'S NATURALS LLC,

        Defendants.

## REPORT AND RECOMMENDATION

Plaintiffs Oatly AB and Oatly, Inc. (together "Oatly") filed suit against Defendant D's Natural's LLC ("D's Natural's"), alleging infringement of its registered "WOW NO COW!" trademark under the Trademark Act of 1946 (the "Lanham Act"), as amended, unfair competition pursuant to 15 U.S.C. § 1125(a), and related claims under state law and common law. (Doc. 1). Defendant D's Naturals filed both an answer and counterclaims under the Lanham Act. (Doc. 7).

This case has been referred to the undersigned to rule on all nondispositive pretrial motions, and to recommend disposition of all dispositive pretrial motions. (Doc. 5). Currently pending is Plaintiff's motion to dismiss two of Defendant's three asserted counterclaims. (Doc. 16). Defendant filed a response in opposition to the motion to dismiss, to which Plaitniff filed a reply. (Docs. 20, 23). For the reasons that follow, I now recommend that Oatley's motion to dismiss the counterclaims be DENIED.

## I. Background As Alleged in Pleadings[1]

Oatly AB is a Swedish company; Oatly Inc. is a U.S. division of Oatly AB. (Doc. 1 at ¶2-3). Oatly alleges that it sells a nondairy milk product made from oats under the WOW NO COW! trademark. Plaintiff further alleges that it extended protection of its trademark in the United States to include multiple other goods including but not limited to oat-based foodstuffs, such as processed oats, oatmeal, muesli, bread, biscuits, pastry, oat cakes, oat-based biscuit mixes, pancakes, waffles, liquid pancake batter, and other foods and beverages based on oats. (*See generally* Doc. 1 at ¶¶9-16).

D's Naturals also offers nondairy food products. On October 31, 2014, D's Naturals filed a trademark application for NO COW, in connection with goods identified as fruit-based meal replacement bars, nut-based snack bars, vegetable-based raw food bars, and vegetable based snack foods. (Doc. 1 at ¶ 24). On May 31, 2017, D's Naturals filed an "intent to use" trademark application for NO COW in connection with additional goods that included a powdered drink mix containing protein, soy protein for use as a nutritional supplement in various powdered and ready-to-drink beverages, nut-butters, cookies, brownies, various types of cereal bars and sports beverages. (Doc. 1 at ¶25). However, on August 30, 2017, the United States Patent and Trademark Office ("USPTO") issued an Office Action that preliminarily refused Defendant's registration as to some of the requested food products. (Doc. 1 and Doc. 7 at ¶26). On October 17, 2017, D's

---

[1]All of the referenced facts are derived from the parties' pleadings, and are assumed to be as stated solely for the purposes of the pending motion to dismiss.

Naturals filed two separate "intent to use" trademark applications for both NO COW & Design, and for "NO COW. NO BULL. NO WHEY!" in connection with a variety of foods and drinks. (Doc. 1 and Doc. 7 at ¶¶27-28). In addition, D's Naturals filed a trademark application for NO COW. NO BULL. NO WHEY! asserting a first date of use as October 6, 2015 in connection with certain foods and drinks. (Docs. 1, 7 at ¶ 29).

Oatly's complaint alleges that D's Naturals is liable for trademark infringement and related causes of action based upon the marketing and/or sale of dairy free products to American consumers using the marks of "NO COW" and/or "NO COW, NO BULL, NO WHEY." (*See generally* Doc. 1 at ¶¶ 22-44). In addition to raising affirmative defenses of estoppel, laches, acquiescence and priority in its answer, D's Naturals has asserted three counterclaims. D's Naturals specifically alleges that Oatley "did not have a bona fide intention to use [its alleged trademark] in U.S. commerce for some or all of the identified goods, and "submitted the declaration of its bona fide intention to use the mark…with willful intent to deceive the USPTO to obtain a registration for WOW NO COW! covering goods that it does not offer in the United States and did not…intend to offer in the United States." (Doc. 7 at ¶¶ 10-11). D's Naturals sets forth all three of its counterclaims based upon "information and belief," citing its "reasonable investigation into Oatley's business and offerings," including product information listed on Oatley's international and U.S. websites. (*See id.* at ¶12).

In its first counterclaim, captioned as "Cancellation or Partial Cancellation of Trademark Registration – No Bona Fide Intent to Use (15 U.S.C. §1119)", D's Naturals

3

asserts that the Plaintiff's trademark WOW NO COW! is subject to cancellation for lack of bona fide intention to use the mark. D's Naturals further alleges that this Court has the authority to order cancellation pursuant to 15 U.S.C. § 1119, and that the willful and intentional nature of Oatley's conduct make this an exceptional case under 15 U.S.C. § 1117(a). (Doc. 7 at ¶¶ 17-18). Importantly, Oatly's motion to dismiss does not seek dismissal of D's Naturals' first counterclaim as stated.

Instead, Oatley seeks to dismiss, for failure to state a claim under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, D's Naturals' second and third counterclaims, both of which assert that Oatly committed fraud on the USPTO. Like the first counterclaim, D's Naturals' second counterclaim seeks cancellation or partial cancellation under § 1119, but is captioned: "Cancellation or Partial Cancellation of Trademark Registration – Fraud on the USPTO." Consistent with the first counterclaim, the second counterclaim focuses on the declaration submitted by Oatley in connection with its U.S. Trademark Application and re-alleges that Oatley had no bona fide intention to use the mark "for some or all of the identified goods, including but not limited to bread, biscuits and pastry." However, the second counterclaim adds that Oatly "submitted the false declaration with a willful intent to deceive the USPTO." (Doc. 7 at ¶¶21, 22). Based upon the allegedly "willful and intentional nature of Oatly's conduct," D's Naturals reiterates this is an exceptional case under 15 U.S.C. § 1117(a).

D's Naturals' third counterclaim is filed under 15 U.S.C. § 1120 and seeks "Civil Liability for False or Fraudulent Registration." The relevant provision, also referred to as

Section 38 of the Trademark Act, states: "Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof." 15 U.S.C. § 1120. To support its third counterclaim, D's Naturals relies upon the same allegations and adds that Oatley procured its trademark "by a false or fraudulent representation or by false means as described above," and that as a result, "D's Naurals has suffered and continues to suffer damages in an amount to be determined." (Doc. 7 at ¶¶ 27-28).

## II. Analysis

### A. Motion to Dismiss Standard

Unlike a motion for summary judgment, a motion to dismiss is directed to the sufficiency of the pleadings, with the Court's review to be limited accordingly. When considering a motion to dismiss under Rule 12(b)(6), the court is required to construe the complaint in the light most favorable to the Plaintiff and to accept all well-pleaded factual allegations in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) and *Lewis v. ACB Business Services*, 135 F.3d 389, 405 (6th Cir. 1998). A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1974). Instead, a complaint must contain either direct or reasonable inferential allegations that support all material elements necessary to sustain a recovery under some

viable legal theory. *Lewis v. ACB*, 135 F.3d at 405 (internal citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). Still, a complaint will generally survive under Rule 12(b)(6) standards if it contains sufficient factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Reilly v. Vadlamudi*, 680 F.3d 617, 622–23 (6th Cir. 2012) (quoting *Ashcraft v. Iqbal*, 29 S.Ct. 1937, 1949 (2009)).

A heightened pleading standard generally applies to fraud-based claims under Rule 9(b) of the Federal Rules of Civil Procedure. D's Naturals' second and third counterclaims both allege fraud based upon the Defendant's "information and belief." (Doc. 16 at 4).

> Federal Rule of Civil Procedure 9(b) requires that "in any complaint averring fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (quoting Fed. R. Civ. P. 9(b)). The requirement "reflects the rulemakers' additional understanding that, in cases involving fraud and mistake, a more specific form of notice is necessary to permit a defendant to draft a responsive pleading." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (internal quotation marks omitted). The Sixth Circuit has explained that to satisfy Rule 9(b), a plaintiff must at a minimum "allege the time, place, and content of the alleged misrepresentation" as well as "the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from

6

the fraud." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (internal citations omitted)…..

A complaint's failure to comply with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6). *United States ex rel. Howard v. Lockheed Martin Corp.*, 499 F. Supp. 2d 972, 976 (S.D. Ohio 2007).

*R.G. Barry Corp. v. Olivet International, Inc.*, 2016 WL 51228, at **3-4 (S.D.Ohio Jan. 5, 2016).

### B. Defendant's Counterclaims Are Sufficiently Pleaded

Oatly's motion to dismiss argues that neither the second nor third claims are pleaded with sufficient particularity. Construing the allegations liberally, however, and reviewing Sixth Circuit case law, I disagree.

As a general principle, courts have acknowledged that "counterclaims for declaratory relief in trademark infringement cases are 'presumptively appropriate.'" *Milacron LLC v. Sough Tool Sales*, 2012 WL 2366639 (S.D. Ohio June 21, 2012) (quoting *Holley Performance Prods., Inc. v. Quick Fuel Tech, Inc.*, 624 F. Supp.2d 610, 613-14 (W.D. Ky. 2008). In *Milacron*, the court held that a counterclaim that sought cancellation under 15 U.S.C. § 1119 (without any allegation of fraud) was adequately pleaded. As stated above, however, a different standard applies to claims that allege fraud. Thus, a claim of fraud must allege "the time, place, and content of the alleged misrepresentation on which [the deceived party] relied; the fraudulent scheme; the fraudulent intent of the [party alleged to have committed fraud]; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-162 (6th Cir. 1993) (internal quotation omitted).

Relying heavily on a Tenth Circuit case, Oatly argues that a defendant who asserts a counterclaim based upon fraud in the procurement of trademark, such as in this case, must plead each element of that claim with specificity. See *San Juan Prods. v. San Juan Pools of Kan., Inc.*, 849 F.2d 468, 473 (10th Cir. 1988). In the *San Juan* case, the Tenth Circuit held – after trial, not on a motion to dismiss – that the district court had erred by finding that the plaintiff had committed fraud in procuring its trademark. The Tenth Circuit identified multiple errors at the district court level, including the failure of the defendants to properly invoke the district court's jurisdiction over its counterclaim, as well as the court's failure to focus on the defendants' arguable failure to properly plead fraud because "fraud in the procurement [of a trademark] must be alleged with specificity." *Id.* at 472. Ultimately, however, the Tenth Circuit reversed not on any pleading infirmity, but on the merits. Thus, the Tenth Circuit held that the evidence presented simply did not satisfy the "clear and convincing" standard required to prove that the plaintiff had committed fraud in obtaining its trademark. *Id.* at 474. While *San Juan* is helpful for its recitation of the elements of a fraudulent procurement claim, its dictum concerning the pleading standard is of less assistance in determining whether D's Naturals has adequately pleaded its counterclaim under Sixth Circuit law.[2]

---

[2]The Sixth Circuit has not cited *San Juan*. Although a few district courts within this circuit have cited *San Juan*, all of those cases are unpublished. In *Holley Performance Products, Inc. v. Quick Fuel*, 2011 WL 3159177 (W.D. Ky. July 26, 2011), the defendants raised as an affirmative defense the alleged fraudulent procurement of trademarks by the plaintiff. The *Holley* court noted that the level of specificity (whether the same as for a general claim of fraud or a greater specificity suggested in *San Juan*) remains unclear in the Sixth Circuit. *Id.* at *3. On the other hand, in the patent case of *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009), the Federal Circuit held that it would apply its ow law, rather than regional circuit law "the to the question of whether inequitable conduct has been pleaded with particularity under Rule 9(b)," because the claim was "unique to patent law." (internal quotation and citation omitted).

To the extent that Oatly implies that a counterclaim in a trademark infringement case based on fraud can never be sufficiently pleaded based upon "information and belief," Oatly is incorrect. On the record presented, D's Naturals appropriately cites to an exception to the Rule 9(b) particularity requirement, which exists when the relevant facts "lie exclusively within the knowledge and control of the opposing party." *Wilkins ex rel. United States v. State of Ohio,* 885 F. Supp. 1055, 1061 (S.D. Ohio 1995); *see also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d at 1330. Here, Oatly alone possesses information on whether it had the capability and intention to produce the type of products in the U.S. that were specifically listed in its application for expansion of its international trademark. "A court should hesitate to dismiss an action when the facts underlying the claim are within the defendant's control, especially when no discovery has been conducted." *Caboodles Cosmetics, Ltd. Partnership v. Caboodles*, LLC, 412 F.Supp.2d 872, 878 (W.D.Tenn.,2006)(citing *Michaels Bldg. Co.,* 848 F.2d 674, 680 (6th Cir. 1988)); *accord Procter & Gamble Co. v. CAO Group, Inc.*, 2013 WL 5353281 (S.D. Ohio Sept. 24, 2013) (denying motion to dismiss counterclaims that patents would not have been issued but for material misrepresentations made by plaintiff to patent office, finding defendant had pleaded sufficient facts under Rule 9(b) to defeat motion to dismiss). Thus, a party "may plead fraud based 'upon information and belief,' but the complaint [or counterclaim] 'must set forth a factual basis for such belief, and the allowance of this

---

Thus, at least in patent cases, *Exergen* held that Rule 9(b) requires identification of "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327.

9

exception must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'" *R.G. Barry Corp.,* 2016 WL 51228, at \*\*3-4, quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 878 (6th Cir. 2006) (internal quotation marks omitted).

In this case, even assuming that the Sixth Circuit would hold that Rule 9(b) requires pleading each element of a fraudulent procurement claim with particularity, as suggested in dictum by *San Juan*, the undersigned concludes that D's Naturals pleading is sufficient to show based upon "information and belief" the elements set forth by the Tenth Circuit that are required to prove the counterclaim:

> (1) the false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false (scienter); (3) the intention to induce action or refraining from action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages proximately resulting from such reliance.

*San Juan Products, Inc.*, 849 F.2d at 473. The first element – the false representation – is alleged to be Oatly's declaration that it had a bona fide intention to use the WOW NO COW! mark for all of the goods identified in its November 7, 2014 application, which included bread, biscuits and pastry among other products. (Counterclaim at ¶¶2, 20, 21). Defendant's allegations reasonably convey that despite having ample time to implement alleged plans to sell approximately thirty food and beverage products listed in its application, the only product that Oatly has ever sold in the United States is oat milk, and its websites and Defendant's research suggest that it has never sold or intended to sell bread, biscuits or pastry anywhere in the world. (*See* Counterclaim at ¶12, Doc. 20 at 6).

10

D's Naturals' allegation that Oatly did not have a bona fide intention to use the mark for all of the identified goods also arguably demonstrates scienter. (Counterclaim at ¶21). D's Naturals further argues that it has sufficiently alleged that statement was material and intentionally made to induce the USPTO to act, because the application requested extension of Oatly's international registration for the listed items in the U.S., and the application would not have been accepted without that specific false declaration concerning the additional products. (Counterclaim ¶¶ 11, 22). Defendant has alleged that the USPTO relied on the statement in issuing the trademark registration (Counterclaim ¶23).

Oatley protests that D's Naturals' allegations are based solely on statements that have been publicly made by Oatly on its websites. In its reply memorandum, Oatly suggests that D's Naturals is asking this Court to "hold that a purported lack of an affirmative public statement of bona fide intent on the internet constitutes fraud in alleging bona fide intent to use a trademark in U.S. Commerce," which "ignores the reality of product research and development." (Doc. 23 at 7). Oatly further points out that in its answer to the counterclaim, it "explained its extensive research and development activities" that support its assertion of a bona fide intent to use the WOW NO COW! mark for a much broader variety of foodstuffs and beverages in the United States than indicated on its websites. (Doc. 23 at 6).

The undersigned disagrees with Oatly's premise. In the context of the pending motion to dismiss, the undersigned is not determining whether other evidence may exist

to support Oatly's defense that its internal (non-public) research and development at the time supported a statement of a bona fide intent to use its WOW NO COW! mark on the multitude of products listed on its application but nowhere mentioned on its websites. Rather, the sole issue is whether D's Naturals' investigation and reliance on Oatly's public statements is sufficient factual support for the Defendant's "information and belief." Under applicable standards and the undersigned's limited Rule 12(b)(6) review, I conclude the factual underpinnings of D's Naturals' "information and belief" are sufficient to support its counterclaims, because a plausible factual basis for the claims exists based upon the clear inconsistency between the list of products in the declaration and the evidence that could be discovered by a reasonable investigation, including public statements. Any contrary evidence that may exist, including non-public research and development, lies exclusively in Oatly's possession and control and cannot be relied upon as a basis to dismiss the counterclaims at the pleading stage.

Oatly's contention that the counterclaims should be dismissed based upon D's Naturals' failure to identify and allege that a specific individual who signed Oatly's application had a deceptive intent at the time he/she submitted the application also fails to persuade. While there are a few exceptions, most cases do not list identification of a specific individual or signatory as an element of a claim for fraudulent procurement of a trademark. *See also generally*, J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, Fifth Edition, § 31.84 ("There is no need to allege that a specific, named individual, had an intent to defraud"); *but see Exergen*, 575 F.3d at 1329 (holding

12

that a specific individual should be identified when pleading a material misrepresentation in a patent application).   In *In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009), the case on which Oatly relies, the appellate court was not concerned with pleading standards on a motion to dismiss, but instead was focused on whether the evidence presented adequately supported the Trademark Trial and Appeal Board's finding that Bose had committed fraud, resulting in cancellation of the registration.  The underlying case was an opposition by Bose against a trademark application filed by another company; the other company counterclaimed for cancellation, alleging fraud by Bose in its renewal application. The Board ruled against Bose, finding fraud when Bose claimed continued use of its mark for all goods identified in its original registration, even though Bose had quit selling some items and was engaged only in the repair of previously sold equipment at the time of the renewal application.  The Federal Circuit Court of Appeals reversed after concluding that the evidence was insufficient to support "an inference of deceptive intent" that would satisfy the "clear and convincing evidence standard required to establish a fraud claim."  *Id.*  While *In re Bose Corp.* might be relevant after the record is developed, it provides no support for Oatly's argument that D's Naturals' counterclaim should be dismissed at the pleading stage.

It must be noted that Oatly maintains that a failure to plead fraud with particularity under Rule 9(b) equally bars both the second and third counterclaims.  In its response in opposition, D's Naturals argues that under the express statutory language of 15 U.S.C. § 1120, its third counterclaim would survive even if its allegations are insufficient under Rule

13

9(b) because the statute imposes civil liability based upon an applicant's "false or fraudulent declaration or representation," suggesting that falsity *without fraud* is sufficient to impose liability. I disagree with D's Naturals' statutory interpretation. Despite the use of the disjunctive "or" in the statute, Section 38 has been widely interpreted as requiring an element of scienter equivalent to fraud. As another district court observed,

> [T]he question has received surprisingly little attention in federal jurisprudence. [Plaintiff] contends that the use of the disjunctive "or" in the phrase "false or fraudulent" means that a declaration that is merely false, even if not fraudulent, should give rise to liability under § 1120. However, the weight of authority suggests that a plaintiff should be required to prove a "knowing falsity." *See* 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* 31:88-89 (4th ed. 2008); *see also United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1226 (10th Cir. 2000) (requiring proof of intent)….

*Classroomdirect.com, LLC v. Draphix, LLC*, 2008 WL 11377639, at *6–7 (N.D. Ala. 2008) (holding that an honest, good faith mistake in a verified statement does not give rise to liability under § 1120). Thus, to the extent that any reviewing court would disagree with the undersigned's conclusion that D's Naturals has sufficiently pleaded fraud in this case, both counterclaims would appear to fail. *See also Brenton Production Enterprises, Inc. v. Motion Media*, 125 F.3d 855, 1997 WL 603412 at *3 (6th Cir. 1997) (Table, *per curiam*) (without discussion of disjunctive statutory language, defining civil liability claim under §1120 as requiring both false representation of a material fact and "knowledge of its falsity").

As a separate basis for dismissal of the third counterclaim, Oatly argues that D's Naturals has failed to sufficiently plead its damages. D's Naturals alleges in its third

14

counterclaim that "[a]s a result of Oatly's false or fraudulent procurement of its trademark registration, D's Naturals has suffered and continues to suffer damages in an amount to be determined." (Counterclaim ¶28). In *Jaguar Land Rover Ltd. v. Bombardier Rec. Prods.*, 2017 U.S. Dist. LEXIS 87753 at *3 (E.D. Mich. June 8, 2017), a Michigan district court granted the plaintiff's motion to dismiss a similar counterclaim based on 15 U.S.C. § 1120, though notably without prejudice to the defendant's leave to amend, after concluding that the defendant had not specifically pleaded that its damages were proximately caused by the allegedly fraudulent registration under the Rule 9(b) heightened pleading standard. *Jaguar* cited *San Juan* for the proposition that the defendant needed to articulate its damages with greater specificity.

In its response in opposition to the motion to dismiss, D's Naturals argues that it is not possible for Defendant to quantify its damages without discovery, and because its damages are ongoing. However, it points out that this Court can take judicial notice of the records of the USPTO showing that D's Naturals' trademark applications for NO COW and for NO COW & Design have been preliminarily refused based upon Oatly's allegedly fraudulently obtained registration. *See Mettke v. Hewlett Packard Co.*, 2012 WL 1158629 at *3 n. 2 (S.D. Ohio April 6, 2012). D's Naturals asserts that it has been directly damaged by Oatly's fraudulent registration of a trademark for products that Oatly has not sold in the Untied States. The undersigned finds the issue to be relatively close but respectfully disagrees with *Jaguar* and finds Defendant to have adequately pleaded damages at this time. *See generally Maker's Mark Distillery, Inc. v. Diageo North America, Inc.*, 2007 WL

15

4292392 (W.D. Ky. Dec. 6, 2007) (denying motion to dismiss counterclaim by alleged infringer that alleged that as a result of the lawsuit, they altered their packaging methods and used a different wax design on their bottles).

Having determined that damages are sufficiently pleaded, the undersigned declines to reach D's Naturals' alternative argument that it is not required to plead damages to prevail in an opposition or cancellation proceeding. (Doc. 20 at 5, n.2, citing the Trademark Trial and Appeal Board's procedural manual, T.B.M.P. § 309.03(b), and related case law).

### III.  Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT** Oatly's motion to dismiss the second and third counterclaims (Doc. 16) be DENIED

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

OATLY AB, et al.,

        Plaintiffs,

   v.

D'S NATURALS LLC,

        Defendants.

Case No. 1:17-cv-840

Barrett, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).