UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

OATLY AB, et al.,                                Case No. 1:17-cv-840

        Plaintiffs,                         Barrett, J.
                                                       Bowman, M.J.

    v.

D'S NATURALS LLC,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Nearly two and a half years ago, Plaintiffs Oatly AB and Oatly, Inc. (together "Oatly") filed suit against Defendant D's Naturals LLC ("D's Naturals"), alleging infringement of its registered "WOW NO COW!" trademark under the Trademark Act of 1946 (the "Lanham Act"), as amended, unfair competition pursuant to 15 U.S.C. § 1125(a), and related claims under state law and common law. (Doc. 1). In January 2018, D's Naturals filed an answer and three counterclaims. (Doc. 7). Oatly responded by moving to dismiss two of those claims, but that motion was denied.

Currently before the Court is D's Naturals motion to amend its pleading in order to add <u>twelve</u> additional counterclaims.[1] For the reasons stated, the undersigned finds that D's Naturals has failed to demonstrate good cause for modifying the Court's scheduling

---

[1] D's Naturals filed two versions of the same motion, including one version under seal and a redacted public version. (Docs. 70, 71). Because it does not reference sealed discovery or contain any confidential or proprietary information, the undersigned finds no cause to file this Order under seal.

order to allow the proposed amendment under Rule 16.  Therefore, the motion is denied.

## I. Procedural Background and Court Deadlines

In February 2018, the parties filed their joint Rule 26(f) report, agreeing to amend pleadings and/or add parties 2 months after the commencement of discovery, which translated to a deadline of April 7, 2018.  (Doc. 18 at 6).  On March 1, 2018, the Court entered a Calendar Order that adopted the parties' deadline for the amendment of pleadings. (Doc. 21).   The conclusion of discovery was tied to a date six months after the Court's ruling on Oatly's motion to dismiss two of D's Naturals three original counterclaims.[2]  On July 20, 2018, the undersigned recommended that Oatly's motion to dismiss be denied.  (Doc. 28).  Over objections, the Court adopted that Report and Recommendation as the ruling of the Court on September 27, 2018.  (Doc. 33).

During the intervening months, the parties engaged in an unsuccessful court-facilitated settlement conference.  Based upon delays from the attempted mediation and the Court's ruling on Oatley's motion to dismiss, on October 18, 2018, the Court granted the parties' joint motion to extend many of the prior deadlines. (Docs. 35, 36).  Critically, however, neither party ever sought to extend the deadline to amend their pleadings.  The Court subsequently granted a second joint motion to continue deadlines (Docs. 37, 38), again without disturbing the long-expired deadline to amend the pleadings.  Oatly later unilaterally moved to further amend the Calendar Order for some deadlines.  (Doc. 40).

---

[2]Neither party sought a stay of the commencement of discovery or any extension of the pleading deadline pending a ruling on the motion to dismiss.

Over D's Naturals strong opposition, the undersigned granted Plaintiffs' motion to further extend discovery and related expert disclosure deadlines. (Doc. 50).

In September 2019, D's Naturals Chicago-based counsel withdrew and attorneys from a new firm entered their appearance. (Docs. 53-60). Shortly thereafter, the Court granted a joint motion for a final 21-day extension to complete previously scheduled depositions, along with a corresponding extension of the dispositive motion deadline to December 20, 2019. (Doc. 66 and Notation Order of 10/18/19).

Just before the December 2019 dispositive motion deadline, new counsel for D's Naturals signaled its intention to seek leave to amend its counterclaims. (Doc. 68). In response, Oatly sought a further extension of the summary judgment deadline. Again over D's Naturals strong opposition, the Court extended the summary judgment deadline "until twenty-one (21) days following the date of filing of the Report and Recommendation disposing of D's Naturals' pending motion for leave to file supplemental and first amended counterclaims." (Doc. 73). Based upon the denial of D's Naturals motion for leave to amend its pleading in this Order,[3] the parties will be directed to file any motions for summary judgment within twenty-one (21) days.

**II. Analysis**

    **A. The Good Cause Standard Under Rule 16**

There is no question that D's Naturals' motion to amend its pleading is extremely

---

[3] Because the motion to amend is denied on non-dispositive procedural grounds, without addressing the merits, the undersigned does so by Order rather than by Report and Recommendation.

3

untimely, considering that the deadline for seeking to amend pleadings expired on April 7, 2018, more than nineteen months before Defendant filed its motion. Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, a Court's Calendar Order may be modified only for "good cause." In a recent published writ of mandamus in which it overturned a trial court's decision to allow amendment (coincidentally) nineteen months after the deadline for amendment, the Sixth Circuit stressed that trial courts have no discretion to amend scheduling orders in the absence of a showing of good cause under Rule 16.

> [The] amendments came long after the deadline set by the court's scheduling order, which means the court's discretion to allow them was limited by Civil Rule 16(b). *See Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). That rule provides that "the district judge ... must issue a scheduling order" that itself "must limit the time[,]" among other things, in which the parties may "amend the pleadings" in the case. Fed. R. Civ. P. 16(b)(1), (3)(A). The Rule thus "ensure[s] that at some point both the parties and the pleadings will be fixed." *Leary*, 349 F.3d at 906 (internal quotation marks omitted). Here, as noted above, the district court entered such an order, setting a deadline of April 25, 2018 for the Counties to amend their complaints in these cases. Thus - in November 2019 - the district court could grant the Counties leave to amend their complaints only if the Counties showed "good cause" for their failure to make the amendments 19 months earlier. *See* Fed. R. Civ. P. 16(b)(4); *see also, e.g., Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) ("the application of Rule 16(b)'s good-cause standard is not optional"). And that meant the district court could grant leave to amend only if the Counties demonstrated that "despite their diligence they could not meet the original deadline." *Leary*, 349 F.3d at 907; *see also, e.g., Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002); *Kmak v. Am. Century Cos.*, 873 F.3d 1030, 1034 (8th Cir. 2017); *Somascan, Inc. v. Phillips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013); *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241-43 (11th Cir. 2009); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).
>
> Neither the Counties nor the district court have even attempted to show that the Counties demonstrated diligence as required by Rule 16(b). Quite the

> contrary: as the district court recognized then, and as the Counties concede now, the Counties did not bring their dispensing claims earlier because they *expressly chose not to bring them*. … Indeed, the Counties' knowing and voluntary relinquishment of those claims arguably amounts to an outright waiver of them. *See generally United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

*In re National Prescription Opiate Litigation*, 956 F.3d 838, 843 (6th Cir. 2020) (emphasis original).

D's Naturals pending motion acknowledges Rule 16, but draws at least as heavily from case law describing the liberal standards for amendment of pleadings under Rule 15. Defendant contends that Oatly will not be prejudiced by the proposed tardy amendment, but that D's Naturals will be greatly prejudiced if the amendment is not permitted. Prejudice to the nonmoving party is not an express component of Rule 16, but the Sixth Circuit has held that it remains a "relevant consideration" and that "a determination of the potential prejudice to the nonmovant…is required when a district court decides whether or not to amend a scheduling order." *Leary v. Daeschner*, 349 F.3d at 906 and 909 (internal quotation marks and additional citation omitted).

Considering that the deadline for the amendment expired more than 19 months prior to the date that Defendant first sought leave to amend, and that the motion was after the close of discovery on the very eve of the summary judgment deadline, the "good cause" standard of Rule 16 is paramount. On the record presented, the undersigned finds that D's Naturals has failed to make a sufficient showing of good cause for a nineteen-month extension of the expired deadline in order to expansively amend its previously asserted counterclaims. Additionally and notwithstanding Defendant's

5

arguments to the contrary, the undersigned concludes that Oatly would be prejudiced by the untimely amendment.

### B. The Scope of Amendment is Unusually Expansive

D's Naturals seeks to <u>quintuple</u> the number of its asserted counterclaims, from three to fifteen.  Although D's Naturals argues that all new claims are "related to" and "consistent with" its original three counterclaims, a quick review of the original pleadings confirms that the proposed new claims would significantly expand the scope of this litigation from a single trademark to six separate trademark registrations.

In December 2017, Oatly initiated the instant lawsuit against D's Naturals.  Oatly was selling a nondairy milk product made from oats using the "WOW NO COW!" mark when it discovered that D's Naturals was selling a snack or protein bar under the "No Cow" name, which Oatly alleged infringed its registered "WOW NO COW!" trademark and constituted unfair competition, among other claims.  D's Naturals responded, in part, by challenging the trademark at issue.  The undersigned previously summarized the parties' respective pleadings as follows:

> Oatly AB is a Swedish company; Oatly Inc. is a U.S. division of Oatly AB. (Doc. 1 at ¶2-3).  Oatly alleges that it sells a nondairy milk product made from oats under the WOW NO COW! trademark.  Plaintiff further alleges that it extended protection of its trademark in the United States to include multiple other goods including but not limited to oat-based foodstuffs, such as processed oats, oatmeal, muesli, bread, biscuits, pastry, oat cakes, oat-based biscuit mixes, pancakes, waffles, liquid pancake batter, and other foods and beverages based on oats. (*See generally* Doc. 1 at ¶¶9-16).
>
> D's Naturals also offers nondairy food products.  On October 31, 2014, D's Naturals filed a trademark application for NO COW, in connection with goods identified as fruit-based meal replacement bars, nut-based

6

snack bars, vegetable-based raw food bars, and vegetable based snack foods. (Doc. 1 at ¶ 24). On May 31, 2017, D's Naturals filed an "intent to use" trademark application for NO COW in connection with additional goods that included a powdered drink mix containing protein, soy protein for use as a nutritional supplement in various powdered and ready-to-drink beverages, nut-butters, cookies, brownies, various types of cereal bars and sports beverages. (Doc. 1 at ¶25). However, on August 30, 2017, the United States Patent and Trademark Office ("USPTO") issued an Office Action that preliminarily refused Defendant's registration as to some of the requested food products. (Doc. 1 and Doc. 7 at ¶26). On October 17, 2017, D's Naturals filed two separate "intent to use" trademark applications for both NO COW & Design, and for "NO COW. NO BULL. NO WHEY!" in connection with a variety of foods and drinks. (Doc. 1 and Doc. 7 at ¶¶27-28). In addition, D's Naturals filed a trademark application for NO COW. NO BULL. NO WHEY! asserting a first date of use as October 6, 2015 in connection with certain foods and drinks. (Docs. 1, 7 at ¶ 29).

Oatly's complaint alleges that D's Naturals is liable for trademark infringement and related causes of action based upon the marketing and/or sale of dairy free products to American consumers using the marks of "NO COW" and/or "NO COW, NO BULL, NO WHEY." (*See generally* Doc. 1 at ¶¶ 22-44). In addition to raising affirmative defenses of estoppel, laches, acquiescence and priority in its answer, D's Naturals has asserted three counterclaims. D's Naturals specifically alleges that Oatley "did not have a bona fide intention to use [its alleged trademark] in U.S. commerce for some or all of the identified goods, and "submitted the declaration of its bona fide intention to use the mark…with willful intent to deceive the USPTO to obtain a registration for WOW NO COW! covering goods that it does not offer in the United States and did not…intend to offer in the United States." (Doc. 7 at ¶¶ 10-11). D's Naturals sets forth all three of its counterclaims based upon "information and belief," citing its "reasonable investigation into Oatley's business and offerings," including product information listed on Oatley's international and U.S. websites. (*See id.* at ¶12).

In its first counterclaim, captioned as "Cancellation or Partial Cancellation of Trademark Registration – No Bona Fide Intent to Use (15 U.S.C. §1119)", D's Naturals asserts that the Plaintiff's trademark WOW NO COW! is subject to cancellation for lack of bona fide intention to use the mark. D's Naturals further alleges that this Court has the authority to order cancellation pursuant to 15 U.S.C. § 1119, and that the willful and intentional nature of Oatley's conduct make this an exceptional case under 15 U.S.C. § 1117(a). (Doc. 7 at ¶¶ 17-18).

7

(Doc. 28, Report and Recommendation at 2-4).

D's Naturals' second counterclaim also seeks cancellation or partial cancellation of the "WOW NO COW!" trademark, but based upon a separate theory of "Fraud on the USPTO." (Doc. 7 at ¶¶ 19-25). D's Naturals' third counterclaim seeks civil damages "for False or Fraudulent Registration" of the same trademark, based upon the allegation that Defendant "has suffered and continues to suffer damages in an amount to be determined." (Doc. 7 at ¶¶ 26-28). Despite noting that it was a "relatively close" issue as to whether D's Natural's had adequately pleaded damages, the Court denied Oatly's motion to dismiss the two fraud-based counterclaims after determining that D's Naturals' pleading "on information and belief" was sufficient under the circumstances presented, because relevant information was solely within Oatly's control. (Doc. 28 at 15).

Registered trademarks are generally identified by seven-digit numbers, but the parties herein abbreviate the relevant registration numbers to three digits for convenience. The single "WOW NO COW!" trademark described in the original pleadings is referred to as the '246 mark. By contrast, the newly proposed counterclaims seek to challenge not only the '246 mark, but five *additional* trademarks registered by Oatly, including Reg. No. 2,701,730 ('730 mark), Reg. No. 4,766,382 ('382 mark); Reg. 4,757998 ('998 mark) and Reg. No. 5,736,047 ('047 mark), and Reg. No. 5,705,884 ('884 mark). Instead of focusing on the '246 mark at issue, nearly all of D's Naturals' new counterclaims attack trademarks registered by Oatly for variations of its company name, including "OATLY" and "OAT-LY!"

8

To be fair, newly proposed Counterclaim 4 does concern the same '246 mark already at issue.[4] Defendant suggests that the addition of Counterclaim 4, then, should be considered a mere "supplementation" of its existing three counterclaims under Rule 15(d). However, even assuming that D's Naturals attempt to proceed under Rule 15(d) would avoid the need to show just cause for amending the scheduling order under Rule 16(b),[5] Defendant fails to satisfy the requirements of Rule 15(d). Thus, Defendant remains obligated to show good cause to modify the long-expired deadline for amendment. Defendant fails to make this showing for *any* of the newly proposed claims.

## C. Supplementation is not Appropriate Under Rule 15(d)

As stated, the most closely related new claim is Counterclaim 4, in which Defendant seeks cancellation or partial cancellation of the same '246 mark currently at issue, but under a new legal theory of abandonment by nonuse. By contrast, existing Counterclaim 1 seeks cancellation or partial cancellation of the '246 mark for lack of bona fide *intent* to use the mark on dry foods.

Rule 15(a)(2) generally requires "the opposing party's written consent or the court's leave" for amendment of the pleadings. However, Rule 15 also allows amendment or supplementation under other specific circumstances, including during or after trial. *See* Rule 15(b). Although the Sixth Circuit has indicated that the standard of review for supplementation under 15(d) is identical to the standard for amendment under Rule 15(a),

---

[4]Two additional proposed Counterclaims (14 and 15) attack a different and more recently registered trademark ('884) but relate to the same "WOW NO COW!" language.
[5]The parties have not cited and the undersigned has not discovered any controlling Sixth Circuit case law on this issue.

9

the express language of Rule 15(d) suggests a narrower focus in determining whether amendment should be permitted. *See generally*, *Spies v. Voinovich*, 48 Fed. Appx. 520, 527 (6th Cir. 2002) (stating that the same standard applies to review of trial court decisions to permit amendment under Rule 15(d) as under Rule 15(a)). Thus, Rule 15(d) governs the situation of when a party seeks "to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Rule 15(d), Fed R. Civ. P. The trial court retains the discretion on whether to permit such supplementation "on just terms." *Id.*

Arguably, a party that does not meet the requirements of Rule 15(d) may not invoke that provision to avoid having to demonstrate "just cause" under Rule 16. Oatly argues that Rule 15(d) does not apply to Counterclaim 4 and that D's Naturals has failed to demonstrate any cause or "just term" for its failure to earlier amend. The undersigned agrees.

In general, the reference to a recent "transaction, occurrence, or event" in Rule 15(d) means some type of factual change that could not have been contemplated or anticipated at the time the initial pleading was served. *See, e.g., Tingting Wang v. China Wok*, 2018 WL 322637, 2018 U.S. Dist. LEXIS 110166 (N.D. Ohio July 2, 2018) (granting leave to supplement when a sale of a business subsequent to the initial pleading gave rise to a new fraudulent conveyance claim that would not have been contemplated). That is not the case here.

Defendant argues that its Counterclaim 4 for abandonment by non-use of the '246

10

mark should be allowed because an abandonment claim usually requires proof of nonuse for at least three consecutive years after registration of the mark. Since Oatly did not register its '246 mark until September 20, 2016, D's Naturals contends that it could not have <u>proven</u> abandonment of the '246 mark until September 20, 2019.[6] Leaving aside the fact that Defendant delayed filing its motion to supplement or amend until three months after that date, D's Naturals' suggestion that it needed to await the passage of additional time in order to <u>plead</u> the claim still fails to persuade.

What is required in terms of evidentiary proof at trial differs from what is required at the pleading stage. Defendant asserts that it was only able to "confirm" Oatly's nonuse and lack of bona fide intent to use the additional marks through the production of documents and the completion of depositions. However, Proposed Counterclaim 4 is based solely upon "information and belief" – the same grounds upon which all existing counterclaims are based. (Doc. 71 at ¶81). And as other courts have noted, an abandonment claim may be pled "at any time" including based upon "a period of nonuse of less than three years." *Koninkijke Philips Elecs. N.V. Hunt Control Sys.*, 2016 WL 3545529 at \*\*10-11, 2016 U.S. Dist. LEXIS 84299 at \*31 (D.N.J. June 29, 2016). The undersigned has little doubt that Oatly would have moved to dismiss any non-use counterclaim as premature, had it originally been included by D's Naturals. But the fact that Oatly might have included the claim in its unsuccessful motion to dismiss did not

---

[6]Registration dates for several of the Oatly-related marks, including marks '730, '382, and '998, on which proposed counterclaims 5-11 are based, occurred in April 2003 and in June and July of 2015.

11

prohibit D's Naturals from pleading it at the outset, particularly since D's Naturals already had pleaded a lack of intent to use. *Id.*

D's Naturals' contention that it could not have pleaded the claim at the outset "on information and belief" is belied in part by its own argument as well as by earlier proceedings in this case. Notably, Oatly objected to the undersigned's recommended denial of its motion to dismiss the original counterclaims, based upon a lack of intent to use, on grounds that D's Naturals was attempting to "disguise" what was in reality a non-use counterclaim – the same claim that D's Naturals now proposes to supplement under Rule 15(d). (See Doc. 30).[7] In response to Oatly's Objections, D's Naturals insisted that it "<u>does not seek cancellation on the basis of non-use or abandonment</u>," but instead that its counterclaim was limited to asserting "cancellation based on Oatly's lack of a bona fide <u>intent</u> to use WOW NO COW!" (Doc. 32 at 7, emphasis added). Judge Barrett overruled Oatly's Objections, agreeing that the counterclaims were sufficiently pleaded based upon a lack of intent to use the WOW NO COW! mark. (Doc. 33 at 5).

In its reply memorandum concerning Counterclaim No. 4, D's Naturals argues that Oatly can claim no prejudice from this claim being added since "Oatly has clearly had notice of [the same] factual allegations" that support Counterclaim 4 "throughout this case." (Doc. 79 at 3). But if Oatly had prior notice, D's Naturals did as well. In other words, Counterclaim 4 is not based upon the type of new transaction or occurrence

---

[7]Oatly further argued in Objections that any "disguised" non-use claims would be improper because "a *prima facie* abandonment claim does not *typically* become ripe until 3 years after the registration date," a date that had not then yet occurred (Doc. 30 at 11, emphasis added).

12

envisioned by Rule 15(d). Given D's Naturals express disavowal of its intention to plead an abandonment claim much earlier in this litigation, with no hint that Defendant might reverse course and attempt to assert the same claim some sixteen months later, the undersigned is hard-pressed to find any basis for allowing Defendant to "supplement" its pleading by adding Counterclaim 4 at this time.

### D.  The Failure to Demonstrate "Good Cause" Under Rule 16

D's Naturals also fails to demonstrate "good cause" to amend the scheduling order to add twelve newly proposed counterclaims. In an attempt to explain its failure to amend by the Court's April 7, 2018 deadline, D's Naturals first argues that its failure to timely move to amend was based upon delays in the production of discovery by Oatly. D's Naturals complains that by the original April 7, 2018 deadline to amend pleadings, "Oatly had not even produced its documents." (Doc. 70 at 2). Plaintiff suggests that Oatly buried important evidence "by delaying its document production until October, November and December 2019," which in turn delayed important depositions until October and November 2019. (Doc. 70 at 9).

However, a delay in the production of discovery is not ordinarily sufficient to demonstrate good cause for a failure to abide by a deadline for the amendment of pleadings, particularly where amendment is being proposed so long past that deadline. In virtually all cases, deadlines to amend the pleadings are intentionally set to expire long before the close of discovery – in part so that the parties engaged in discovery will not be subjected to unfair surprises as to the scope of the relevant claims at issue.

13

D's Naturals' suggestion that, in an exception to the rule, it needed to await full evidentiary proof prior to asserting its twelve new counterclaims is wholly unconvincing on the record presented. As discussed, in opposing Oatly's prior motion to dismiss its original counterclaims, D's Naturals successfully defended its right to assert its counterclaims based <u>solely</u> upon information and belief. Given the Court's prior ruling, it makes no sense for D's Naturals to now claim that it needed to await definitive proof through the conclusion of discovery to assert claims based on the same or similar legal theories.

In addition, as Oatly points out in opposition to the motion, D's Naturals' new counterclaims do not appear to contain any particular allegations that could not have been discovered at an earlier date. Instead, as pleaded, D's Naturals expresses its "belief" as to Oatly's use and intent of the three marks based upon its "reasonable investigation" through Oatly's websites – the very same type of investigation on which its original claims were based. In short, the undersigned finds no "just cause" for Defendant's failure to amend its pleading within the deadline previously established by this Court, much less for such a broad and sweeping amendments as those proposed here, more than nineteen months past the deadline.

### E. Prejudice to Oatly

Having already determined that D's Naturals has failed to demonstrate good cause, the undersigned more briefly considers the potential prejudice to Oatly from the addition of twelve new counterclaims. The Sixth Circuit has noted that, while prejudice to

14

the nonmoving party should be considered it "is merely a consideration that informs whether [the movant] has satisfied the 'good cause' requirement of the *Leary* standard. *Korn v. Paul Revere Life Ins. Co.*, 382 Fed. Appx. 443, 450 (6th Cir. 2010) (*per curiam*) (finding good cause standard unmet even if there were no prejudice where plaintiff failed to "explain why he failed to move for the amendment at a time that would not have required a modification of the scheduling order."). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (citation and internal quotations omitted)

Oatly complains that it would be prejudiced because it "made litigation choices and expended resources over the course of nearly two years based upon the potential exposure presented by D's Natural's original counterclaims." (Doc. 77 at 16). Oatly states that it "might have made different litigation choices" at various points in the litigation, whether during discovery, or regarding its decision not to retain experts based on the existing claims, or even during the Court-facilitated mediation previously held in August 2018 if Oatly had known that Defendant was challenging not one but six different trademark registrations.

In its reply memorandum, D's Naturals first argues that Oatly's "selective silence…speaks volumes," because Oatly's response to the proposed amendment does not delve into or contest the factual predicates and statutory grounds asserted by Defendant for its large number of newly proposed counterclaims. But Defendant's

15

argument is misplaced. Oatly is not required to respond on the merits to a dozen newly proposed claims at this time when the only issue before the Court is whether or not to allow D's Naturals leave to an amend out of time. No conclusion can or should be drawn from a party's decision not to fully challenge the merits of so many claims not yet in issue, when the sole issue is a procedural one.[8]

As to the arguments that have been presented, D's Naturals maintains that Oatly's arguments are "purely academic" because Oatly does not state the need for additional discovery and in fact opposes reopening discovery. Nor does Oatly describe with particularity what different litigation choices or strategies that Oatly "might" have employed if the proposed amendment had been made two years ago. D's Naturals suggests that the addition of Counterclaims 14 and 15, despite referencing a different registered trademark, should result in no prejudice because those two claims involve the same "WOW NO COW!" language already at issue. D's Naturals argues that Oatly has failed to identify specific and "actual prejudice" from the addition of any of the twelve new counterclaims as opposed to merely speculative arguments.

Although Oatly has not painted a picture of insurmountable prejudice, the undersigned still easily finds it would be prejudiced from the late and expansive amendment. Even if no additional discovery were required (a Hobson's choice as Oatly points out), Oatly still would be required to address a total of fifteen claims rather than just

---

[8]Although Oatly has chosen to include a challenge to D's Naturals' standing to present many of the new claims, a standing challenge differs from a challenge to the merits because it challenges the subject matter jurisdiction of the Court to review a claim. *See Mays v. LaRose*, 951 F.3d 775, 781 (6th Cir. 2020).

16

three claims in any future summary judgment motion, as well as at trial. The potential for juror confusion over the addition of so many new claims also contributes to the potential prejudice to Oatly.

In the context of responding to a separate challenge raised by Oatly to the Defendant's standing to present many of the new counterclaims, D's Naturals attempts to flip the prejudice analysis on its head, suggesting that it will be the party more prejudiced by denial of the proposed amendment. D's Naturals contends that Oatly plans to use its OATLY registrations at trial to bolster its original claims of infringement before the jury, by "leveraging the broad list of goods and services in the OATLY Registrations to establish the strength of the '246 mark, the relatedness of the parties' goods, and the likelihood of product line expansion. (Doc. 79 at 7). D's Naturals argues that it needs to challenge the five additional marks in order to offset potential juror confusion because otherwise Oatly will use its additional trademarks "to support, corroborate, and amplify its trademark infringement claims in this lawsuit." (Doc. 79 at 10).

To the extent that D's Naturals is suggesting it will be unduly prejudiced at trial by the denial of its pending motion, the undersigned disagrees. Even if prejudice to the movant were part of the consideration under Rule 16(b) (it is not), the denial of leave to amend does not preclude D's Naturals from presenting evidence at trial related to its defense against the infringement claims. And, if D's Naturals believes that Oatly is seeking to present unsupported evidence trial that is too far afield from the claims at issue, D's Naturals may present its objection or file an appropriate motion in limine before the

17

trial judge.

### F.  The Parties' Respective Accusations of Bad Faith

Both parties accuse the other of conduct akin to bad faith litigation practices, with D's Naturals accusing Oatly of intentional delays and obfuscation during discovery, and Oatly accusing D's Naturals of exploiting the proposed addition of counterclaims solely for purposes of increasing the potential settlement value of the case.  In the exercise of its discretion and determination of whether to amend the calendar order to allow the belated amendment to the pleadings, a court may consider whether a party's motion seeking leave to amend was made in bad faith and/or with a dilatory motive.  *See In re Suburban Motor Freight, Inc.*, 114 B.R. 943, 951-52 (S.D. Ohio 1990) (holding under Rule 15(a) without discussion of Rule 16 that replacement counsel's "new legal theories and strategies are impermissible grounds for seeking leave to amend".

At times, strong advocacy in the heat of litigation may be mistakenly perceived or communicated in such a way that is interpreted as a sign of bad faith.  That said, although not without some reservations, the undersigned declines to ascribe improper motivations to either party's litigation strategies at this time.  Instead, the Court encourages all counsel to maintain their professionalism and to refrain from unnecessary ad hominin attacks.

### G. Standing and Jurisdictional Issues

Oatly argues that D's Naturals motion for leave to amend to add most of the newly proposed counterclaims should be denied on grounds of futility, based upon D's Naturals lack of standing to challenge the "OATLY" or "OAT-LY!" marks (proposed Counterclaims

18

5-13). Oatly maintains that D's Naturals has no interest in using any mark relating to the Oatly name. The undersigned finds no need to reach this argument based upon its conclusion that D's Naturals has failed to show good cause for its failure to amend its pleading on or before April 7, 2018.

### III.    Conclusion and Order

Accordingly, **IT IS ORDERED**:

1. D's Naturals' motion to supplement or amend its answer and counterclaims (Docs. 70, 71) is DENIED for the reasons stated under Rule 16;

2. The prior Order staying the summary judgment deadline (Doc. 69) is vacated, with the parties to file summary judgment motions within twenty-one (21) days of the date of this Order.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

19