**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| OATLY AB, | : | Case No. 1:17-cv-840 |
| | : | |
| and | : | Judge Matthew W. McFarland |
| | : | |
| OATLY INC., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| D'S NATURALS LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| D'S NATURALS LLC, | : | |
| | : | |
| Counterclaimant, | : | |
| | : | |
| v. | : | |
| | : | |
| OATLY AB, | : | |
| | : | |
| Counterclaim Defendant. | : | |

---

## OPINION AND ORDER

---

This case is before the Court on the parties' cross motions for partial summary judgment. Defendant and Counterclaimant D's Naturals LLC moves for summary judgment on its first counterclaim—partial cancellation of a trademark registration for lack of bona fide intent—and on Oatly AB and Oatly Inc.'s (jointly, Oatly) prayer for actual damages. (Doc. 87.) Oatly AB, a plaintiff and Counterclaim Defendant, moves for

summary judgment on all three of D's Naturals's counterclaims, as well as the issue of priority. (Doc. 91.)

For the reasons discussed below, the Court **GRANTS** summary judgment in D's Naturals's favor on its first counterclaim, **GRANTS** summary judgment in Oatly AB's favor on D's Naturals's second and third counterclaims, **DENIES** summary judgment on actual damages, and **DENIES** summary judgment on the issue of priority.

## FACTS

This trademark case involves companies who make dairy-free products. Plaintiff and Counterclaim Defendant, Oatly AB, is a Swedish company that makes oat-based dairy substitute foods and beverages. (D's Naturals's Response to Oatly's Proposed Undisputed Facts, Doc. 98-1, ¶ 1.) Plaintiff Oatly Inc. is Oatly AB's American subsidiary. (*Id.* at ¶ 2.) Defendant and Counterclaimant D's Naturals LLC is an American company that sells, among other things, dairy-free snack bars. (Doc. 98-1, ¶ 3; Oatly AB's Response to D's Naturals's Statement of Undisputed Facts, Doc. 99-1, ¶¶ 1, 19.)

Their dispute centers around a similarity between their brands. Oatly owns the WOW NO COW! trademark over several different kinds of food groups. D's Naturals uses the trademark No Cow as its product brand. (Doc. 99-1 at ¶ 1.) Generally, Oatly claims that D's Naturals's use of the No Cow trademark confuses consumers in violation of federal law, and D's Naturals challenges the enforceability of Oatly's WOW NO COW! mark. Both sides seek the cancellation of the other company's trademark registration.

### A. Oatly and its WOW NO COW! Mark

On May 9, 2014, Oatly's attempts to register the WOW NO COW! trademark began

when the company filed a trademark application in the European Union. (Doc. 98-1, Pg. ID 2204-05, ¶ 36.) The European registration included the goods below, including the italicized "dry foods" in Class 30:

> Class 29: Oat milk; milk substitute; milk substitutes containing oats, cream substitutes containing oats, sour milk substitutes containing oats, yoghurt substitutes containing oats.

> Class 30: *Flour, oatmeal, rolled oats; oat-based foodstuffs, namely, processed oats, oatmeal; muesli; bread; biscuits; pastry; confectionery containing oats, namely, oat cakes; oat-based biscuit mixes, pancakes, waffles,* pre-mixed liquid pancake batter, oat-based gruel, oat-based sauces, oat-based vanilla custard, ice-cream, oat-based ice-cream, flavored ice cream, fruit ice-cream.

> Class 32: Non-alcoholic beverages, namely, oat-based beverages, fruit and berry beverages based on oats.

(Doc. 98-1, Pg. ID 2205, ¶ 36 (emphasis added).) The parties agree that the italicized goods above are "dry foods" for purposes of distinguishing goods within Class 30. (Doc. 99-1, Pg. ID 2234, ¶ 2.) Oatly received its EU trademark registration on the WOW NO COW! mark a few months later in September 2014. (Doc. 98-1, Pg. ID 2205, ¶ 37.)

Under an international treaty known as the Madrid Protocol, businesses may obtain trademark protection in several jurisdictions with a single registration. *See* Madrid Protocol, United States Patent and Trademark Office, https://www.uspto.gov/trademarks/laws/madrid-protocol (last visited March 16, 2022); S. Rept. 106-249, Madrid Protocol Implementation Act, 106th Congress, https://www.congress.gov/congressional-report/106th-congress/senate-report/249/1 (last visited March 16, 2022). In 2002, Congress passed the Madrid Protocol Implementation Act, which provided for substantially the same rights. *See* 15 U.S.C. §§

1141 – 1141n; *see also* S. Rept. 106-249, *supra*. That act permits the holder of an international trademark registration to extend the protection of that trademark to cover the United States. 15 U.S.C. § 1141h. Generally speaking, by including, in a request for such an extension, a declaration of a bona fide intention to use the mark in commerce, the holder of an international registration shows constructive use of the mark and receives the same rights specified in 15 U.S.C. § 1057(c). *See* 15 U.S.C. § 1141f. In sum, U.S. law provides a way to extend European trademark registrations to include protection within **the United States**.

On November 7, 2014, Oatly took advantage of one of those provisions when it applied to extend its European registration of the WOW NO COW! mark under § 66(a) of the Lanham Act, 15 U.S.C. § 1141f, to obtain rights under U.S. law. (Doc. 99-1, Pg. ID 2234, ¶ 3; Doc. 98-1, Pg. ID 2205, ¶ 38.) In its international application, Oatly included a declaration that it had a bona fide intention to use the mark. (Ex. 9 to Petersson Dep., Doc. 89-2, Pg. ID 1700-01; Doc. 98-1, Pg. ID 2205, ¶ 39.)

On September 20, 2016, almost two years later, the United States Patent and Trademark Office (USPTO) issued, under § 66(a) of the Lanham Act, U.S. Registration No. 5,043,246 for the WOW NO COW! mark ("the '246 Reg." or "the WOW NO COW! mark"). (Doc. 99-1, Pg. ID 2234, ¶ 2; Doc. 98-1, Pg. ID 2205, ¶ 40.) Because of its successful European registration, Oatly's U.S. registration over the WOW NO COW! mark carried a priority date of May 9, 2014. (Doc. 98-1, Pg. ID 2205, ¶ 40.)

Oatly has only used its mark on oat milk, ice cream, and flavored beverages in the United States. (Petersson Dep., Doc. 70-14, Pg. ID 939-40.) Oatly first began selling oat

milk in the U.S. sometime in mid to late 2016. (Petersson Dep., Doc. 70-14, Pg. ID 940.)

**B. D's Naturals and the No Cow Brand**

In early 2014, Daniel Katz, the founder of D's Naturals, along with his father, thought of the name No Cow. (Katz Dep., Doc. 77-2, Pg. ID 1339.) In March 2014, he went to a natural foods expo and handed out almond milk and ice cream with the No Cow brand on them. (*Id.* at Pg. ID 1341.) But then he transitioned to selling protein bars sometime later that year. (*Id.* at Pg. ID 1339, 1343.) In July 2014, he had prototypes of the bars made. (Ex. D00008276-77, Doc. 96-1, Pg. ID 2128-29.)

On October 31, 2014, D's Naturals filed a trademark application with the USPTO for the No Cow mark, asserting a date of first use at least as early as July 1, 2014. (Compl., Doc. 1, ¶ 24; Answer, Doc. 7, ¶ 24; Ex. 2, Doc. 95-2, Pg. ID 2093.) In November 2014, D's Naturals introduced No Cow protein bars on social media. (Katz Dep., Doc. 77-2, Pg. ID 1357.) D's Naturals began selling protein bars in late 2014 or early 2015. (Doc. 98-1, Pg. ID 2206, ¶ 41.)

On October 27, 2015, about a year after its filing, the application for the No Cow mark resulted in U.S. Reg. No. 4,839,835 in connection with goods identified as fruit-based meal replacement bars, nut-based snack bars, vegetable-based raw food bars, and vegetable-based snack foods. (Compl., Doc. 1, ¶ 24; Answer, Doc. 7, ¶ 24.)

## LEGAL STANDARD

When there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, a court shall grant summary judgment. Fed. R. Civ. P. 56(a). The moving party has the burden to conclusively show that no genuine

issue of material fact exists. *Celotex Corp. v. Catrett*, <u>477 U.S. 317, 323</u> (1986); *Lansing Dairy, Inc. v. Espy*, <u>39 F.3d 1339, 1347</u> (6th Cir. 1994). If the moving party meets that burden, then it becomes the nonmoving party's responsibility to point out specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, <u>477 U.S. 242, 250</u> (1986).

A court is under no obligation to plumb the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, <u>78 F.3d 1079, 1087</u> (6th Cir. 1996). A "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside*, <u>396 F.3d 730, 734</u> (6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put forward probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Anderson*, <u>477 U.S. at 251-52</u>; *Lansing Dairy*, <u>39 F.3d at 1347</u>. If the nonmoving party fails to make the necessary showing for an element upon which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, <u>477 U.S. at 323</u>.

**ISSUES PRESENTED**

Oatly's Complaint asserts claims against D's Naturals for (1) infringement of a registered trademark in violation of <u>15 U.S.C. § 1114</u>; <u>(2)</u> unfair competition and false designation of origin, in violation of <u>15 U.S.C. § 1125(a)</u>; <u>(3)</u> violation of the Ohio Uniform Deceptive Trade Practices Act, R.C. 4165.02; (4) common law trademark infringement; (5) common law unfair competition; and (6) cancellation of registration due to priority. (Compl., <u>Doc. 1, ¶¶ 45</u> – 91.) In response, D's Naturals filed counterclaims alleging (1) cancellation or partial cancellation of trademark registration – no bona fide intent to use,

6

under 15 U.S.C. § 1119; (2) cancellation or partial cancellation of trademark registration – fraud on the USPTO, under 15 U.S.C. § 1119; and (3) civil liability for false or fraudulent registration under 15 U.S.C. § 1120. (Answer and Counterclaim, Doc. 7, Pg. ID 73-75.)

Following the close of discovery, the parties filed cross-motions for summary judgment. Specifically, D's Naturals argues that (1) it is entitled to summary judgment on its first counterclaim to partially cancel Oatly's trademark registration for the WOW NO COW! mark, because Oatly lacked the requisite bona fide intent to use the mark on certain goods listed in the registration when the application was filed and (2) D's Naturals is entitled to partial summary judgment on Oatly's prayer for actual damages because the record is devoid of evidence to support a quantifiable injury. Oatly cross-moved for summary judgment on all three of D's Naturals's counterclaims, as well as the issue of priority, arguing that: (1) abundant evidence shows that Oatly had a bona fide intent to use the WOW NO COW! mark on all goods identified in the trademark application; (2) D's Naturals cannot meet the high burden to show fraud, thus entitling Oatly to summary judgment on D's Naturals's second and third counterclaims sounding in fraud; and (3) Oatly's WOW NO COW! mark has priority based on the Madrid Protocol.

Given the cross-motion stance, the Court will address the arguments in the following order: cancellation of Oatly's trademark registration; fraud on the USPTO; false or fraudulent registration; Oatly's prayer for actual damages; and the issue of priority among the trademarks.

## ANALYSIS

A.  **D's Naturals's First Counterclaim: Partial Cancellation of Oatly's Trademark Registration Because Oatly Allegedly Did Not Have Bona Fide Intent to Use the Mark as to Dry Foods.**

D's Naturals's first counterclaim alleges that Oatly did not have a bona fide intention to use the mark for some or all of the identified goods in the WOW NO COW! registration.  (Answer and Counterclaims, Doc. 7, ¶ 14.)  Each side claims the Court should grant summary judgment in its own favor.

According to D's Naturals, Oatly's '246 Reg. for the WOW NO COW! mark covers several dry food categories for which Oatly did not have a bona fide intent to use as of 2014, when it first applied for trademark protection.  For that reason, D's Naturals argues, Oatly's '246 Reg. should be partially cancelled to delete the dry foods in Class 30.  (Doc. 88, Pg. ID 1566.)

Oatly disagrees, pointing to documentary evidence and testimony that, in its view, objectively demonstrate its bona fide intent "to use the WOW NO COW! mark such that this Court should grant it summary judgment" on D's Naturals's first counterclaim. (Doc. 92, Pg. ID 2034.)

The lack of bona fide intent to use a mark in commerce at the time of filing the application is a proper basis on which to challenge an application for trademark registration.  *M.Z. Berger & Co. v. Swatch AG*, 787 F.3d 1368, 1375-76 (Fed. Cir. 2015).  *See also Sandro Andy, S.A. v. Light Inc.*, No. 12 CIV. 2392 HB, 2012 WL 6709268, at *1 (S.D.N.Y. Dec. 27, 2012) (a U.S. registration based on a § 66(a) request for extension is subject to the same grounds of cancellation as registration issued under §§ 1 or 44(e)).  There is no

statutory definition of "bona fide," and the evidentiary bar is not high, but the circumstances must show that the applicant's intent to use the mark at the time of filing "was firm and not merely" an intent to "reserve a right in the mark." *Id.* at 1376. Courts determine bona fide intent on a case-by-case basis based on the totality of the circumstances. *Id.*

Analysis of this issue follows a burden-shifting format. The party challenging the application bears the initial burden of demonstrating by a preponderance of the evidence that the applicant lacked a bona fide intent to use the mark on the identified goods. *Kelly Servs., Inc. v. Creative Harbor, LLC*, 846 F.3d 857, 865 (6th Cir. 2017). If the challenger makes a prima facie case that the applicant lacked a bona fide intention to use the mark, then the burden shifts to the applicant to produce evidence that shows otherwise. *Id.* Despite a shifting burden of production, however, the burden of persuasion by a preponderance of the evidence remains with the challenger. *Id.* Importantly, if a court determines that an applicant lacks bona fide intent to use the mark in commerce as to some, but not all, of the goods listed in an application, then it excises only the overbroad portions. *Id.* at 875.

**1. Prima facie showing of lack of bona fide intent**

D's Naturals must show that it is more likely than not that Oatly lacked, when it filed its application in 2014, a bona fide intent to use the mark on all the goods listed in the application. *Id.* at 865; *M.Z. Berger*, 787 F.3d at 1376. D's Naturals focuses on the *dry foods* identified in Class 30: flour, oatmeal, rolled oats; oat-based foodstuffs, namely, processed oats, oatmeal; muesli; bread; biscuits; pastry; confectionery containing oats, namely, oat cakes; oat-based biscuit mixes, pancakes, and waffles. (Doc. 99-1, Pg. ID

2234, ¶ 2.) And, as far as those dry foods are concerned, D's Naturals makes a prima facie showing that, when Oatly filed the application in November 2014, it lacked the bona fide intent to bring to them to market.

*Kelly Services* is instructive in how a challenger to a trademark application meets its prima facie burden. There, the challenger, Kelly Services, successfully showed that it was more likely than not that the applicant, Creative Harbor, lacked bona fide intent to use the mark "as to at least some of the goods" identified in the applications when they were filed. *Kelly Servs.*, 846 F.3d at 866. Examples of why bona fide intent was lacking included: testimony that Creative Harbor's CEO applied for trademark protection to protect the brand "in case the brand got bigger"; the items on the applications "were defined with the idea of . . . future exploration"; some of the listed items "might be of future importance" and "might protect" the company's endeavors; and the CEO simply wanted to keep his options open. *Id.* at 866.

On such a record, the Sixth Circuit concluded that Creative Harbor did not have a "firm" intention to use the mark in connection with certain items listed on the applications. *Id.* (citing *M.Z. Berger*, 787 F.3d at 1376). Much of the testimony strongly suggested that Creative Harbor included some items on the applications to merely "reserve a right in the mark." *Id.* (citing *M.Z. Berger*, 787 F.3d at 1376). The statements about "future exploration" especially indicated of lack of firm intent. *Id.* That kind of speculative reservation was not permitted—a company may not claim a trademark for uses that might materialize later after non-specific exploration down the road. *Id.* Rather, a company must have "firm plans to use the Mark at the time the Applications were

10

filed." *Id.* (citing *M.Z. Berger*, 787 F.3d at 1376). For all those reasons, the challenger met its initial burden of showing by a preponderance of the evidence that the registrant lacked bona fide intent as to some of the goods and services listed on the applications.

In this case, none of the evidence shows a bona fide intent to bring the dry foods to market. First, during written discovery, D's Naturals asked Oatly to describe its plans in November 2014 to offer in the U.S. each product that appeared in the '246 Reg., including flour, oatmeal, rolled oats, biscuits, pastry, confectionary containing oats, and others. Oatly objected, but also answered that it had "███████████████████████ ████████████████████ regarding development and manufacturing of the goods" listed in the '246 Reg. (Oatly AB's Response to D's Naturals First Set of Interrogatories, Doc. 70-3, Pg. ID 859, ¶ 6.) This vague answer might, for better or worse, be expected in the context of interrogatories, but it reflects nothing more than general research and development—not a firm intent.

Second, and more importantly, further documentary evidence and testimony similarly fail to bring into focus any firm decision by Oatly to produce dry foods. When asked about certain dry foods listed in Class 30, Sofia Ehlde, Oatly's innovation director, testified: "████████ and the other products mentioned here has been in the discussions . . . when we started to expand our innovation activities in '13, '14." (Ehlde Dep., Doc. 70-16, Pg. ID 1111-12.) She stated that "we looked at the very, very broad spectra of product that would be relevant for Oatly." (*Id.* at Pg. ID 1112.) As to ████████ in particular, she testified, "Currently we don't have any active development project on launching an ███ ████, but it's a priority thing. . . . The bigger the brand becomes, the more relevant more

11

categories are." (*Id.*) She had no specific expectation of when ███████ would launch in the U.S. (*Id.*)

The fact that ██████ and other non-dairy dry foods had "been in the discussions" is not the same as a *firm decision* to actually make those things. (Ehlde Dep., Doc. 70-16, Pg. ID 1111-12.) Likewise with Oatly's consideration of the "very, very broad" range of "relevant" products. (*Id.* at Pg. ID 1112.) Mere exploration of a category of goods cannot merit trademark protection over that entire category. The logical basis for this is because the possible world of goods a company *might* produce will always be larger than the inventory of products a company *has the good faith intention* to produce. But a company is only entitled to protection of the latter. *See M.Z. Berger*, 787 F.3d at 1375.

What of Ehlde's testimony that certain food categories rise up the list of priorities depending on how big the brand becomes? This too indicates a lack of bona fide intent to use the mark in commerce *at the time of the application* as to those foods. Brand growth, first of all, is speculative and not guaranteed. More importantly, the production of goods conditioned upon a potential increase in brand profitability cannot serve as a proxy for the firm decision to bring certain products to market. If companies could obtain trademark protection for products that become "relevant" *after* their brands grow, the focus would necessarily shift from the company's intent at the time of filing to some other time. But this flies in the face of two black-letter rules. First, trademark law requires bona fide intent *at the time of the application*. *M.Z. Berger*, 787 F.3d at 1378. Second, companies may not apply for trademark protection merely to reserve a right in the mark. *Kelly Servs.*, 846 F.3d at 867.

Indeed, many of Ehlde's statements are like the statements in *Kelly Services* that were indicative of attempts to reserve rights in the mark for possible future expansion. In *Kelly Services*, the Creative Harbor CEO "had clear ideas for some of [the goods and services listed in the application], and *some of them were meant for future exploration*." *Kelly Servs.*, 846 F.3d at 861, 867 (emphasis original). He acknowledged that he sought to protect the brand in case it "got bigger" and that some of the listed items *"might* be of future importance." *Id.* at 866 (emphasis original). Here, similarly, Ehlde testified that Oatly was not actively developing certain dry foods because they were not a priority — but, she said, "The bigger the brand becomes, the more relevant more categories are." (Ehlde Dep., Doc. 70-16, Pg. ID 1112.) That is another way of saying, like the *Kelly Services* applicant, that some of the categories Oatly listed in its application *"might* be of future importance" if the brand "got bigger." *Kelly Servs.*, 846 F.3d at 866.

Just like the applicant in *Kelly Services*, Oatly is not permitted to claim the trademark for uses that "might only materialize" after future exploration. *Id.* at 867. Rather, Oatly must have had firm plans to use the mark as to all of the goods listed in the application and at the time the application was filed. *Id.; M.Z. Berger*, 787 F.3d at 1376. The record, however, reveals a lack of such plans. Accordingly, D's Naturals has made a prima facie case that Oatly lacked a bona fide intent to use the WOW NO COW! mark in commerce with regard to the Class 30 dry foods in the application at the time the application was filed.

### 2. Rebuttal evidence

Because D's Naturals has met its initial burden of production, Oatly must come forward either with objective documentary evidence establishing its bona fide intent, or facts supporting a sound explanation as to why such evidence is lacking. *Kelly Servs.*, 846 F.3d at 868. Upon review of the record, Oatly fails to provide sufficient objective evidence showing that it had a bona fide intent, at the time of filing the application, to produce the dry foods listed in Class 30 of the application.

Oatly offers several pieces of documentary evidence in an attempt to establish its bona fide intent to develop, market, and sell all the goods in its WOW NO COW! registration. (Doc. 99 at Pg. ID 2219.) The Court will consider them one at a time.

1. *Brief on Company's Mission,* (Ehlde Dep. Ex. 17, Doc. 90-2, Pg. ID 1903-04). This 2-page document briefly lays out areas Oatly wants to take leadership in (e.g., sustainability) and its mission for innovation (e.g., developing tasteful healthy food based on oats). It states, "We need to define our framework: What could be an Oatly product? What could not be an Oatly product? What are the limits?" (Doc. 90-2, at Pg. ID 1903.) Then it identifies some strategic focus areas for innovation, which include a variety of products from a ███████████████████████████████████████." (*Id.* at 1904.)

The nonspecific content of this brief is not enough to rebut the contention that Oatly lacked a bona fide intent to bring certain specific products to market. First, the brief itself recognizes Oatly's need to define its own framework. The high-level questions — what could be an Oatly product? what could not be an Oatly product? — suggest that Oatly was still figuring out what it was going to make and what it was not going to make.

14

The tenor of the brief is exploratory, imaginative, and general; it does not indicate that Oatly had a *firm intention* to make particular dry foods.

Second, the brief's categories and subcategories are themselves vague. For instance, one category is "meals." A subcategory under "meals" is "breakfast." (*Id.* at Pg. ID 1904.) But the brief does not further elaborate what sort of breakfast foods Oatly planned to bring to market. To the extent some subcategories are more specific, such as ███████████████, they are of no avail to Oatly because they are not dry food products that D's Naturals seeks to cancel from the '246 Reg. Nor does Oatly's ████ ███████████—discussed in more detail below—appear anywhere on the brief.

For these reasons, this document does not evidence a bona fide intent to use the WOW NO COW! mark in connection with dry foods. *See Kelly Servs.*, 846 F.3d at 868.

2. *Project M1308 Notes*, (Ehlde Dep. Ex. 20, Doc. 90-3, Pg. ID 1906-16). This document pertains to a beverage project—not dry food. Oatly does not attempt to explain how this beverage project suffices to avoid partial cancellation of dry food items from the '246 Reg. (*See* Doc. 99, Pg. ID 2219-20; Doc. 105, Pg. ID 2346-47.) No further discussion is necessary to explain why this document fails to establish bona fide intent.

3. ███████ *Project Report*, (Doc. 90-1, Pg. ID 1736-82). Oatly next points to a ████████████████████████████████████████████." (Doc. 92, Pg. ID 2026, 2047; Doc. 99, Pg. ID 2219.) Oatly claims that the record shows it is developing its ████ ████████ part of those plans was to sell dry goods being developed ███████████ ████████." (Doc. 92, Pg. ID 2035.)

The first problem here is that Oatly's contemplated provision of ████████ does

15

not corroborate an intent to use any particular mark on any underlying dry food *goods* themselves. *Honda Motor Co., Ltd. v. Friedrich Winkelmann*, <u>90 U.S.P.Q.2d 1660</u> (T.T.A.B. 2009) (documents showing intent to use the mark on services did not corroborate a bona fide intent to use the mark on goods). Thus, Oatly's concept to ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ does not demonstrate a bona fide intent to use the WOW NO COW! mark on dry foods.

The second problem is that Oatly simply does not present facts to rebut the argument that it lacked a bona fide intent to use the WOW NO COW! mark on dry foods—whether connected to ▮▮▮▮▮▮▮▮▮▮ or not. On the subject of ▮▮▮▮ ▮▮▮▮▮▮ Oatly argues that for a company of its size, "it would make no sense for its records to detail each individual product association with the WOW NO COW! mark." (*Id.* at Pg. ID 2035.) This argument has the misfortune of being on the wrong side of a clear rule of law. *Kelly Services* makes it plain that, once a challenger makes its case that bona fide intent is lacking, the applicant must present objective *documentary* evidence to the contrary—whether or not it "makes sense" to maintain such records—or facts supporting why the evidence does not exist. *Kelly Servs.*, <u>846 F.3d at 868</u>. Instead of marshalling documentary evidence, Oatly attempts to explain why the evidence does not exist by claiming that "it would make no sense" for an international company to keep records of which products are associated with certain trademarks.

This position fails for two reasons. First, it is an argument, not a fact. Yet the Sixth Circuit requires *facts* supporting a logical justification for the lack of evidence, not an assertion unanchored by fact. *Id.* Second, Oatly's position on the lack of documentary

evidence is contradictory. It presents significant documentary evidence on much less significant matters than products it actually develops, markets, and sells—see the first two pieces of documentary evidence above—so the position that it is nonsensical for an international company to keep documents on "each individual product" associated with a registered trademark is self-defeating. (Doc. 92, Pg. ID 2035.)

The ▇▇▇▇▇▇▇▇▇, however, merits further discussion. Oatly states that part of its ▇▇▇▇▇ was to sell dry foods which were being developed under its ▇▇▇ ▇▇▇▇▇▇▇. (Doc. 92, Pg. ID 2035.) Thus, in Oatly's view, the ▇▇▇▇▇▇▇▇ shows its intent to sell dry foods under its mark. But the record on the ▇▇▇▇▇▇▇ ▇▇▇▇ fails to show the requisite bona fide intent. Ms. Ehlde, Oatly's innovation director, testified that, throughout Oatly's "idea generation," the ▇▇▇▇▇▇▇ was a "project that has been going on for as long as [she could] remember." (Ehlde Dep., Doc. 70-16, Pg. ID 1114.) For reference, Ms. Ehlde had worked at Oatly since 1999, 20 years at the date of deposition. (*Id.* at Pg. ID 1096.) Based on her testimony, therefore, the ▇▇▇▇▇▇▇▇ ▇▇▇▇ had existed for up to twenty years. And, to be sure, Oatly had considered "all kinds of applications" for ▇▇▇▇▇▇▇▇▇▇▇▇▇. (*Id.*) ▇▇▇▇▇▇▇▇▇▇▇, as of 2019, were on Oatly's five-year launch plan. But she could not remember "exactly what those projects are." (*Id.*) Oatly was "looking into . . . different applications on ▇▇▇▇▇▇▇▇ which is still an open question, since we are in the development process of seeing what is feasible." (*Id.* at Pg. ID 1116.) What those "different applications" were, she did not specify. To the extent they existed, they were "not so well defined." (*Id.* at Pg. ID 1114.) A company cannot use a mark if it does not have a product, and so little progress after so

17

long a time fails to display a firm conviction to use the mark in commerce. *See SODIMA v. International Yogurt Co., Inc.*, 662 F. Supp. 839, 851 (D. Or. 1987) (cancelling a mark for abandonment when trademark-holder had "only the vaguest notion of the kind of product" the trademark represented).

Other testimony confirms that ████████████████ as of 2019, had still not received the attention or resources consistent with a firm decision in 2014 to actually produce dry foods products, let alone use the WOW NO COW! mark on them. Toni Petersson, Oatly's chief executive officer, testified that, as of November 2019, ████████ ████████████████████████████████████ (Petersson Dep., Doc. 70-14, Pg. ID 935.) When asked what would need to happen to make ████████████████████████████ ████████████████████████████ the following exchange took place:

Petersson:  We would just have to ████████████ That's one way of doing it. The easiest way would be to ████████████████ ████████ something and . . . that would be the ████████████ for many different types of products.

Attorney:  Does Oatly have any plans for 2020 to begin ████████████ ████████?

Petersson:  I can't tell right now but it's definitely something that we're going to need to do.

Attorney:  So there are not concrete plans to begin ████████████ ████████ in 2020; correct?

Petersson:  No, not a set decision. There are a lot of projects around ████ ████████ right now so depending on what solution we choose, we're going to make a decision. Is that going to happen now? I don't know.

(*Id.* at Pg. ID 935-36.) These pieces of testimony further reveal Oatly's inability to show

18

it had a bona fide intent to produce dry foods in connection with the WOW NO COW! mark. It cannot be the case that a company can have a firm decision to bring a product to market when that product is "not well defined." *See SODIMA v. International Yogurt Co., Inc.*, 662 F. Supp. 839, 851 (D. Or. 1987). Nor when the ideas for them have been around for years but without any actual innovation. *See Lincoln National Corp. v. Anderson*, 110 U.S.P.Q.2d 1271 (T.T.A.B. 2014) (generalized intention to desire to license a mark "at some indefinite time in the future" does not demonstrate the requisite bona fide intent).

Accordingly, the ████████████████████████ fail to show that Oatly had a bona fide intent to use the WOW NO COW! mark in commerce as to dry foods, when it filed its application in 2014.

4. *Product Development Process Spreadsheet,* (Ehlde Dep. Ex. 23, Doc. 90-4, Pg. ID 1918-23). This document presents the product development process for an oat-based ████████████ that is "available [in] other countries but not yet in Sweden." (*Id.* at Pg. ID 1921.) The specified market, therefore, is Sweden, not the U.S. And it pertains to ████████ which, D's Naturals argues without rebuttal from Oatly, is not a dry food. Accordingly, this document fails to rebut the argument that Oatly lacked a bona fide intent to use the WOW NO COW! mark in commerce as to the dry foods identified in the application.

5. *Oatly's Research Spreadsheet Tracking Product Development,* (Ehlde Dep. Ex. 33, Doc. 90-6, Pg. ID 1939-41). This document charts out product development beginning in 2015. But, since Oatly filed its application in November 2014, this document fails to indicate its bona fide intent as of the November 2014 filing date. And Oatly had not even

begun selling its flagship product, oat milk, in the United States, until 2016. (Petersson Dep., Doc. 70-14, Pg. ID 940.) Oatly, Inc., the company's American subsidiary, did not even exist yet. (Doc. 98-1, Pg. ID 2194, ¶ 2.) This document fails to demonstrate the requisite bona fide intent for these reasons.

6. *"Adding value* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Report prepared by* ▮▮▮▮▮▮▮ (Ehlde Dep. Ex. 30, Doc. 90-5, Pg. ID 1925-37). Two problems exist: First, D's Naturals notes that this document was created in March 2015 and Oatly does not disagree. Second, "vague references to research and development of products" fail to establish the requisite bona fide intent. *SmithKline Beecham Corp. v. Omnisource DDS, LLC*, 97 U.S.P.Q.2d 1300, *5 (T.T.A.B. 2010). For these reasons, this document fails to constitute evidence that, when Oatly filed its application in November 2014, it had a bona fide intent to use the WOW NO COW! mark in U.S. commerce as to dry foods.

\*     \*     \*

Upon careful consideration of the totality of the circumstances, Oatly's documentary evidence fails to make an issue of material fact as to whether it had a bona fide intent, when it filed its application, to use the WOW NO COW! mark in connection to dry goods. *See DC Comics and Marvel Characters, Inc. v. Michael Craig Silver*, 2009 WL 4085622, at *6 (Aug. 21, 2009) (applicant's "confidence in his ability" to bring goods to market in the future failed to rebut the challenger's showing that applicant did not possess the necessary intent to use the mark on the identified goods when he filed his application). This failure constitutes objective proof that it lacked the requisite bona fide intent. *Kelly Servs.*, 846 F.3d at 868-69.

3.      Oatly's reliance on a six-year defense in § 1141k(a) fails

Oatly argues that, even if it could not demonstrate any product development or bona fide intent, it has a defense under the Madrid Protocol, 15 U.S.C. § 1141 et seq. According to Oatly, an applicant filing under the Madrid Protocol must include a statement of sincere intent to use the mark in commerce and, importantly, in "due course" must either file a statement of actual use of the mark or convert the application into a use application. (Doc. 92 at Pg. ID 2042; Doc. 99, Pg ID. 2216.) *See Kelly Servs.*, 846 F.3d at 863. Due course for a statement of use based on a § 66(a) registration, Oatly contends, is six years from the date of the registration in the U.S. 15 U.S.C. § 1141k(a). Oatly's certificate of extension of protection issued on September 20, 2016. (Doc. 99-1, Pg. 2234, ¶ 2; Doc. 98-1, Pg. ID 2205, ¶ 40.) Thus, Oatly claims that, under § 1141k, it has six years from that date before it needs to demonstrate use of the WOW NO COW! mark on all the goods in the application. (Doc. 99, Pg. ID 2216.)

This novel defense fails. Section 1141k(a) does not provide a grace period. Rather, § 1141k(a) mirrors the requirements for the *renewal* of registrations under 15 U.S.C. § 1058, applying those requirements to Madrid Protocol registrations filed under § 66(a). *See* 15 U.S.C. § 1058(a). These requirements are an administrative boon to reflecting actual use in the marketplace—not a substantive shield to prolonged nonuse. *See* MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 19:135 (5th ed.). To keep a trademark registration alive and valid, the holder must file an affidavit between the fifth and sixth years of registration. If not, the registration is automatically canceled. *Id.*; 37 C.F.R. § 2.164(b). This is to remove from the register any marks that are no longer in use, or

21

"deadwood." McCarthy on Trademarks, § 19:135. Madrid Protocol applicants are subject to these administrative requirements as well. *Id.; see also Dragon Bleu (SARL) v. VENM, LLC*, 112 U.S.P.Q.2d 1925, *5 (T.T.A.B. 2014) ("once a registration issues, it is treated much the same as any other registration on the Principal Register"). Thus, what § 1141k(a) lays out is the means by which a trademark holder maintains a registration on a mark it is using in commerce—not a six-year grace period within which it may eventually begin using a mark on goods.

### 4. Remedy—Excise the Overbroad Portions of the Registration

When an application contains products which the applicant lacked a bona fide intent to make, a district court excises those overbroad portions. *Kelly Servs.*, 846 F. 3d at 875. D's Naturals has shown that Oatly lacked a bona fide intention in November 2014 to use the WOW NO COW! mark on the dry foods listed in Class 30 of the application. The parties stipulate that, for purposes here, the "dry foods" are flour, oatmeal, rolled oats; oat-based foodstuffs, namely, processed oats, oatmeal; muesli; bread; biscuits; pastry; confectionary containing oats, namely, oat cakes; oat-based biscuit mixes, pancakes, and waffles. (Doc. 99-1, Pg. ID 2234, ¶ 2.) Accordingly, the Court grants summary judgment in D's Naturals's favor on its first counterclaim and strikes the Class 30 dry foods from the '246 Reg.

**B.   D's Naturals's Second Counterclaim: Oatly's Fraud on USPTO.**

Oatly moves for summary judgment on D's Naturals's second counterclaim, which seeks cancellation or partial cancellation of Oatly's trademark registration due to Oatly's alleged fraud on the USPTO. To prove that a trademark registrant fraudulently

procured a trademark, the claimant must establish (1) the false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false (scienter); (3) the intention to induce action or refraining from action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages proximately resulting from such reliance. *Oatly AB v. D's Naturals, LLC*, No. 1:17CV840, 2018 WL 4625553, at *2 (S.D. Ohio Sept. 27, 2018) (quoting *San Juan Prod., Inc. v. San Juan Pools of Kansas, Inc.*, 849 F.2d 468, 473 (10th Cir. 1988)). *See also* MCCARTHY ON TRADEMARKS, § 31:61.

In opposition, D's Naturals argues that the record demonstrates that Oatly misled the USPTO. First, D's Naturals asserts that Oatly's CEO declared in March 2013 that the company was using its Oatly mark on oat milk in U.S. commerce in order to maintain its registration. (Doc. 95-1, Pg. ID 2083-90.) But this is inconsistent, according to D's Naturals, with his testimony that they did not launch oat milk in the U.S. until 2016. (Petersson Dep., Doc. 70-14, Pg. ID 938-39.) Second, D's Naturals claims that Oatly's CEO admitted that many goods in Oatly's omnibus registration for the OATLY mark (not the WOW NO COW! Mark) covered goods that it never had plans to sell. On these bases, it appears that D's Naturals asks this Court to infer that Oatly committed fraud when it applied for the WOW NO COW! Mark.

None of D's Naturals's proffered evidence is relevant. D's Naturals's counterclaim deals with the '246 Reg. (Answer and Counterclaim, Doc. 7, ¶¶ 23-24.) The first set of proffered evidence, however, deals with U.S. Reg. No. 2,701,730 (McFarland Decl., Doc. 95, ¶ 3), and the second set deals with U.S. Reg. No. 6,736,047. (Kliebenstein Decl. Ex. 7A,

Doc. 70-12, Pg. ID 893-99.) What Oatly did or did not do on other trademark applications comes nowhere close to putting at issue Oatly's subjective intent to deceive the USPTO when it comes to the WOW NO COW! application. *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009) (subjective intent to deceive is "an indispensable element of the analysis").

Thus, D's Naturals's defense falls well short of its heavy burden of proof. *Id.* at 1243. And it fails to point out any knowing and material misrepresentations on the WOW NO COW! application, which is the actual application at issue. The "very nature" of fraud requires it to be proven "to the hilt" with clear and convincing evidence; there is "no room for . . inference . . . and, obviously, any doubt must be resolved against the charging party." *Id.* (quoting *Smith Int'l, Inc. v. Olin Corp.*, 209 USPQ 1033, 1044 (T.T.A.B.1981)). As inference is entirely what D's Naturals relies on here, it has failed to put any fact at issue with respect to its second counterclaim.

Accordingly, the Court grants Oatly's Motion for Summary Judgment as to D's Naturals's second counterclaim.

**C.    D's Naturals's Third Counterclaim:  Oatly Procured the '246 Registration for WOW NO COW! Through False or Fraudulent Representations.**

Oatly next moves for summary judgment on D's Naturals's third counterclaim for civil liability for false or fraudulent registration under 15 U.S.C § 1120. "In order to prevail on a section 1120 claim, the [claimant] must show false representation of a material fact, knowledge of its falsity, intent to induce reliance on the misrepresentation, and damages." *Brenton Prod. Enterprises, Inc. v. Motion Media*, 125 F.3d 855 (6th Cir. 1997).

Here, D's Naturals claims that Oatly procured the '246 Reg. based on false or fraudulent representation—with an emphasis on the "or" in the statute. In its view, the disjunctive "or" means that "the elements of fraud are not the only avenue for relief under that claim." (Doc. 98, Pg. ID 2185.) That is, a claimant need only show falsity without fraud to impose liability. (*See* Report and Recommendation, Doc. 28, Pg. ID 197.) But D's Naturals recognizes that the weight of authority conditions liability on the registrant's knowingly having made false or misleading statements in the application. *Id.* For that reason, and also because it fails to point to any statements Oatly made knowing they were false or misleading, there is no dispute on a material fact as to this issue.

Accordingly, the Court grants Oatly's Motion for Summary Judgment as to D's Naturals's third counterclaim.

**D.     Oatly's Claim for the Remedy of Actual Damages.**

D's Naturals moves for summary judgment on Oatly's claims seeking actual damages, arguing there is no evidence of a compensable injury. (Doc. 88, Pg. ID 1572.) In trademark infringement actions, damages are governed by the law of damages in tort actions. *Chain v. Tropodyne Corp.*, 28 F.3d 421, *4 (6th Cir. 2000) (Table). To be entitled to damages, a plaintiff must prove that "some damages were the certain result of the wrong." *Id.* (quoting *Broan Mfg. Co. v. Associated Distributors, Inc.*, 923 F.2d 1232, 1235 (6th Cir. 1991)). When the damage claimed is *not* the certain result of the wrong, damages are precluded.

However, the plaintiff faces a lower standard of proof in determining the exact amount of damages. *Id.* When the existence of damages is proven, "all that an award of

damages requires is substantial evidence in the record to permit a factfinder to draw reasonable inferences and make a fair and reasonable assessment of the amount of damages." *Id.* (quoting *Grantham and Mann, Inc. v. American Safety Prods.*, 831 F.2d 596, 601–02 (6th Cir. 1987)).

The parties both look to the decision in *JL Beverage Co., LLC v. Beam, Inc.*, No. 211CV00417MMDCWH, 2017 WL 3666302 (D. Nev. Aug. 24, 2017) as providing a suitable analysis for addressing actual damages in trademark cases. That case recognized two potential grounds for entering summary judgment as to actual damages: (1) a failure to disclose a computation of damages during discovery that is neither justified nor harmless and (2) a failure to provide specific evidence to support and quantity a claim for actual damages. *JL Beverage Co.*, 2017 WL 3666302, at *3. The Court will address both grounds.

### 1. Nondisclosure of a computation of alleged actual damages.

Fed. R. Civ. P. 26(a)(1) requires that a party include in its mandatory initial disclosures "a computation of each category of damages claimed," and that it also disclose the specific documents and materials "on which [that] computation is based." *See also JL Beverage*, 2017 WL 3666302, at *3. Fed. R. Civ. P. 37(c)(1) provides that a party that does not disclose the information required by Rule 26(a) (or which fails to supplement as required by Rule 26(e)) "is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). *See also JL Beverage Co.*, 2017 WL 3666302, *3. Furthermore, Fed. R. Civ. P. 56(a) and (g) make clear that a court can grant summary judgment on "an item of damages or other relief."

The Sixth Circuit considers the following factors to determine whether an omitted disclosure is substantially justified or harmless: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence. *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015).

D's Naturals argues that Oatly failed to include a damages computation in its initial disclosures served on February 15, 2018. Oatly does not deny this, but claims that D's Naturals has not suffered any harm. Oatly also argues that a portion of the actual damages are based on a loss of goodwill (which the jury should quantify), that D's Naturals asked Oatly's witnesses about harm caused by the alleged infringement (eliminating the chance of detrimental surprise), and D's Naturals never moved to compel a computation of damages (suggesting that any failure was harmless).

D's Naturals contends that it was harmed because it was prevented from preparing a responsive case to a claim for actual damages, citing *JL Beverage Co.* But, respectfully, that decision's analysis on harmlessness was limited to a single observation that one party's omission prevented the other party from preparing a responsive case. *See JL Beverage*, 2017 WL 3666302, at *4. That is not enough here, in light of the factors the Sixth Circuit has identified as governing this question.

Because the parties' briefs did not address these factors, the Court cannot determine that no genuine issue of material fact exists as to whether D's Naturals was harmed by Oatly's omission. Thus, a dispute of material fact exists as to whether Oatly's

failure to provide a damages computation is harmless, and summary judgment must be denied.

**2. Evidence to support Oatly's request for actual damages.**

D's Naturals argues, alternatively, that, Oatly's claims for actual damages still fail for lack of proof. Both parties accept that summary judgment on actual damages is proper when the party seeking the award cannot show (1) lost profits, (2) damage to its goodwill, or (3) the use of necessary corrective advertising due to the alleged infringement. *See F.D.I.C. v. Homestead Mortg. Co.*, No. 04-74842, 2010 WL 5420279, at *18 (E.D. Mich. Dec. 27, 2010), *amended on reconsideration in part sub nom. Fed. Deposit Ins. Corp. v. Homestead Mortg. Co.*, No. 04-74842, 2011 WL 717456 (E.D. Mich. Feb. 22, 2011). *See also Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 690 (6th Cir. 2000) ("when courts have held that actual confusion must be demonstrated before monetary damages are recoverable, they have referred to plaintiffs who were seeking damages that would have been suffered in the marketplace, i.e., lost sales, lost profits, or loss of goodwill"). Oatly does not claim it has lost any sales or profits, so the Court will address corrective advertising and damage to goodwill.

*Corrective advertising.* Oatly claims that it had to alter its marketing plans and engage in corrective advertising. It chose to stop using a large neon sign with the WOW NO COW! trademark, because they were concerned it would create confusion with customers. (Messersmith Dep., Doc. 70-15, Pg. ID 1025.) D's Naturals disagrees, arguing that a decision to stop using promotional materials is not advertising.

D's Naturals is correct. Corrective advertising is designed to eliminate confusion

28

and educate customers. MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 30:81 (5th ed.) So-called "damage control" damages, which have been analogized if not equated to corrective advertising expenses, may be awarded upon a showing of (1) a likelihood of confusion or damages to sales, profits, or goodwill; (2) damage control expenses that are attributable to the violation; and (3) the reasonableness of damage control efforts. *Balance Dynamics*, 204 F.3d at 692; MCCARTHY ON TRADEMARKS, § 30:83. Oatly fails to satisfy this standard, namely, the second element—the decision to stop using a promotional sign is not an *expense*. Additionally, Oatly has not pointed to anything in the record quantifying any expenses, including the value of the sign. *Powerhouse Marks LLC v. Chi Hsin Impex, Inc.*, No. 04-73923, 2006 WL 8431783, at *3 (E.D. Mich. Feb. 2, 2006) ("no evidence that Powerhouse has expended any funds to control any damage caused by the alleged violation"). Accordingly, Oatly fails to meet the corrective-advertising standard.

*Damage to goodwill.* Oatly argues that it has suffered damage to its goodwill due to consumer confusion, and that damage to its goodwill supports an award of actual damages. The parties discuss several pieces of evidence, whether they are admissible evidence and, if so, whether they show confusion. But because one set of evidence is dispositive—the social media posts—the Court will only discuss those.

Oatly has submitted social media posts showing pictures of its WOW NO COW! light-up sign. Social media users posted comments like "I [love] #nocow products!" and, simply, "#nocow." (Compl. Ex. D, Doc. 1-2, Pg. ID 32.) At a convention when Oatly displayed the WOW NO COW! sign, D's Naturals also had a booth nearby. (Messersmith

Dep., Doc. 70-15, Pg. ID 1079.) Other social media posts displaying Oatly products feature the "#nocow" hashtag. (Compl. Ex. E, Doc. 1-2, Pg. ID 34-35; Rousseau Decl., Doc. 97-1, Pg. ID 2162-68.)

Viewing these facts in a light most favorable to Oatly as the non-moving party, the Court finds that there is a genuine dispute of material fact as to whether these social media posts demonstrate actual confusion and whether they damage Oatly's goodwill. The reality is that D's Naturals operates under the No Cow brand and the hashtags in these posts appear to show a pattern of consumers mistakenly identifying Oatly's products with No Cow. At the summary judgment stage, such a pattern permits a reasonable juror to conclude that consumers are confusing Oatly for No Cow, or vice versa.

D's Naturals believes that Oatly has conceded that there was no confusion between the brands. It points to testimony of Michael Messersmith, Oatly Inc.'s general manager. Messersmith testified that the "#nocow" hashtag, when paired with an Oatly product were examples of "potential confusion and potential overlap." (Messersmith Dep., Doc. 70-15, Pg. ID 1079.) D's Naturals maintains that this operates as a kind of concession. Potential overlap and confusion, it argues, are not the same as actual confusion. That is true, as far it goes. But that statement still permits that the instances of "potential confusion," here, *were* actual confusion. Dispute on this point is enough to permit the jury to decide.

D's Naturals also argues that the "#nocow" hashtag is commonly used on social media to describe dairy-free product experiences unrelated to both of these companies.

Maybe so. But that too is an argument better suited for the jury. Given the similarity of the two marks—WOW NO COW! and No Cow—there is at least a genuine dispute as to whether the recurring appearance of the "#nocow" hashtag connected to Oatly products indicates confusion and, by extension, damage to Oatly's goodwill. *Compare Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 703 F. Supp. 2d 671, 704 (W.D. Ky. 2010), *aff'd*, 679 F.3d 410 (6th Cir. 2012) and *Powerhouse Marks LLC v. Chi Hsin Impex, Inc.*, No. 04-73923, 2006 WL 8431783, at *3 (E.D. Mich. Feb. 2, 2006) *with ServPro Intell. Prop., Inc. v. Blanton*, 451 F. Supp. 3d 710, 728 (W.D. Ky. 2020).

*       *       *

Because both of D's Naturals's grounds for excluding actual damages fail, the Court denies D's Naturals's Motion for Summary Judgment with respect to actual damages.

**E.     Oatly's Contention that the WOW NO COW! Mark Has Complete Priority Over D's Naturals's Mark.**

Lastly, Oatly claims that its WOW NO COW! mark has priority over any mark D's Naturals claims to have. Oatly's mark carries a priority date of May 9, 2014. (Doc. 98-1, Pg. ID 2205, ¶ 40.) D's Naturals claims that it has priority over Oatly based on its actual use of the No Cow mark *before* May 9, 2014.

The priority determination focuses on whether the accused party established a bona fide prior use of the mark, as opposed to an intention to use the mark. *Allard Enterprises, Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 356 (6th Cir. 1998). One of the bedrock principles of trademark law is that trademark or "service mark ownership

31

is not acquired by federal or state registration. Rather, ownership rights flow only from prior appropriation and actual use in the market." *Id.* (quoting *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir. 1991)). Registration of a trademark, however, serves as prima facie evidence of ownership, and places on the defendant the burden of showing their prior appropriation and continued use of the trademark. *Id.* That means that, here—because Oatly was issued the '246 Reg. with a May 9, 2014 priority date (Doc. 98-1, Pg. ID 2205, ¶ 40)—D's Naturals must show, or at least place in issue, facts supporting its use of the mark in commerce before that date. *See id.*

"Use in commerce" means "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. A mark is deemed to be in use in commerce on goods when "it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto . . . and the goods are sold or transported in commerce." *Id.* As long as there is a "genuine use of the mark in commerce," ownership may be established even if the first uses are "not extensive and do not result in deep market penetration or widespread recognition." *Allard Enterprises*, 146 F.3d at 358.

D's Naturals points to deposition testimony of its founder, Daniel Katz, that he came up with the idea for No Cow in early 2014. (Katz Dep., Doc. 77-2, Pg. ID 1339.) He testified that, in March 2014, he attended an expo in California with almond milk and ice cream products branded with the No Cow logo. He handed them out to people at the expo. (*Id.* at Pg. ID 1341.) On the question of payment, he testified:

Attorney:    But you weren't receiving any payment for [the products]?

Katz:        Correct. Well, substantial payment. I mean, that's not to say
             somebody didn't walk by and say, I'll give you 5 bucks for
             that pint of ice cream. I was cash strapped at that time, but—

Attorney:    Do you remember that happening?

Katz:        No. From what I can remember, no.

(*Id.*) Thus, taking his testimony at face value, the No Cow brand was placed on goods in March 2014—which is obviously prior to Oatly's May 2014 priority date. But they were given away, not sold. The parties do not discuss whether giving products away at an expo constitutes transport in commerce. *See* 15 U.S.C. § 1127. In D's Naturals's trademark application for the No Cow mark, it specified that its "first use anywhere date" was "at least as early as 07/01/2014." (Doc. 95-2, Pg. ID 2094. Its "first use in commerce date" was "at least as early as 10/31/2014." (*Id.*) These entries on their face do not foreclose the possibility that No Cow appeared *before* those dates. The date of first sale, therefore, is indeterminate.

Further complicating this issue is the fact that D's Naturals abandoned the project of almond milk and ice cream sometime later in 2014. (*Id.* at Pg. ID 1342.) He shifted his focus to protein bars, which were first made in July 2014. (Doc. 96-1, Pg. ID 2128-29.) So another question remains, if D's Naturals has priority at all, as to the effect of his abandonment of milk and ice cream and transition to protein bars. The issue in most cases is continuous use of the mark, not continuous use of the mark on the same product. *See, e.g., Nat. Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1330 (11th Cir. 2008); *SODIMA v. International Yogurt Co., Inc.*, 662 F. Supp. 839, 851 (D. Or. 1987) (prima facie

evidence of abandonment when no products associated with the mark were developed for years); *Buyfigure.com, Inc. v. R.M. Hollenshead Auto Sales & Leasing, Inc.*, No. CIV.A. 07-4680, 2010 WL 5342823, at *4 (E.D. Pa. Dec. 20, 2010).  So it is not crystal clear that D's Naturals's abandonment of one product to make another forfeits a possible defense of priority when other products associated with the No Cow mark appeared on the scene shortly after.

     With these questions at play, viewing the facts in the most favorable light toward D's Naturals, material factual issues prevent this Court from entering summary judgment on the issue of priority.  Accordingly, the Court denies Oatly's summary judgment as to priority.

## THIS OPINION SHALL BE FILED INITIALLY UNDER SEAL

     Earlier in this litigation, Oatly moved to permanently seal certain documents, including the parties' summary judgment briefing.  (Doc. 109.)  D's Naturals was not opposed.  The basis for the seal was that the material consisted of competitively sensitive information, confidential product research and development, and future business plans. Oatly argued that none of the information was of great public concern, but that its privacy interests were high given the nature of the information.  Oatly also identified a narrow way to tailor the seal.  In short, the motion justified the seal using the proper seal analysis under *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016).

     The Court granted that motion.  "From the pleadings and redacted versions of the briefs filed in the public docket, the public can discern the nature of the parties' dispute and will ultimately be able to understand the reasoning underlying the Court's ruling on

the parties' dispositive motions." (Doc. 111.) For the same reasons laid out in the motion to permanently seal documents (Doc. 109) and the order granting that motion (Doc. 111), the Court seals this Opinion. In order to conform with the narrow-tailoring aspect of a seal, the parties shall, within 30 days of the release of this Opinion, jointly file (1) a copy of this Opinion with proposed strikethroughs of only the material that should be redacted in the final version available to the public and (2) a *brief* addendum as to why each redaction is necessary under *Shane Group*.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** D's Naturals's Motion for Summary Judgment (Doc. 87) and **GRANTS IN PART AND DENIES IN PART** Oatly's Motion for Summary Judgment (Doc. 91) and enters judgment as follows:

(1) The Court **GRANTS** summary judgment for D's Naturals on its first counterclaim and **STRIKES** the Class 30 dry foods, as stipulated by the parties at ECF Doc. 99-1, Pg. ID 2234, ¶ 2, from the '246 Reg.

(2) The Court **GRANTS** summary judgment for Oatly AB on D's Naturals's second counterclaim.

(3) The Court **GRANTS** summary judgment for Oatly AB on D's Naturals's third counterclaim.

(4) The Court **DENIES** D's Naturals's Motion for Summary Judgment as it relates to Oatly's prayer for actual damages.

(5) The Court **DENIES** Oatly AB's Motion for Summary Judgment on the issue of whether the WOW NO COW! mark has priority.

(6) The Court **SEALS** this Opinion and **DIRECTS** the parties, within 30 days of entry, to jointly file (a) a copy of this Opinion with proposed strikethroughs of only the material that should be redacted in the final version available to the public and (b) a *brief* addendum as to why each redaction is necessary under *Shane Group*.

In light of the above, the Court has entered summary judgment on all of D's Naturals's counterclaims. All of Oatly's claims remain pending before this Court.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND